CHARLES H. DAVENPORT v. GEORGE E. CROWELL, ET AL.

October Term, 1906.

Present: MUNSON, WATSON, HASELTON, POWERS, and MILES, JJ.

Opinion filed January 10, 1907.

*Corporations—Acts Ultra Vires—Loss by Accommodation Paper—Responsibility of Officers—Suit in Equity by Stockholder—Estoppel—Acquiescence in General Practice—Master's Report—Construction—Inferences Therefrom by Court of Chancery—Presumption on Appeal—Simple Contracts — Rescission — Evidence — Circumstances—Conduct of Parties.*

A court of chancery may infer such facts from those reported by a special master, appointed to hear a case in equity on the evidence and report the facts, as necessarily or fairly result therefrom; and on appeal, the Supreme Court will presume that the court of

chancery made such inferences, if that is necessary in order to sustain the decree below.

In a suit in chancery brought by a stockholder of a corporation to compel its president to indemnify the corporation for loss sustained by it in consequence of having been compelled to pay certain of its notes which it had, for accommodation merely, *ultra vires*, and with said president's consent, exchanged with another corporation, that had since failed, for the latter's notes of the same amount, certain facts reported by the master examined, and *held* that the court of chancery might well infer therefrom that, at the time his corporation adopted the practice of exchanging paper for accommodation to meet a deficiency in its funds, the orator had full knowledge thereof and acquiesced therein; and that, to sustain the decree below, this Court will presume that inference to have been there made.

Since the transactions complained of were but specific instances of a general practice adopted by his corporation with the orator's full knowledge and assent, he is bound thereby, regardless of whether he in fact knew, or "ought to have known," of said transactions at the time they were made.

In such case, the burden is on the orator to show the withdrawal of his assent or acquiescence before the performance of the acts with the consequences of which he seeks to charge an officer or agent of the corporation who participated therein.

Stockholders cannot lie by sanctioning, or by their silence acquiescing in, a practice that is *ultra vires* of the corporation to which they belong, watching the result; if it be favorable, to insist on its validity; but if it prove disastrous, to institute an action against the corporation's officer or agent who, in the performance of his duties, participated in the acts done pursuant to such practice, for the loss or damage resulting therefrom.

In a suit in chancery brought by a stockholder of a corporation to compel its president to indemnify the corporation for loss sustained by it in consequence of having been compelled to pay certain of its notes which it had, for accommodation merely, *ultra vires*, and with the president's consent, exchanged with another corporation, that had since failed, for the latter's notes of the same amount, the findings of the master examined, and *held* that a fair construction thereof does not warrant the orator's contention that said accommodation was extended, in the major part, for the sole

benefit of said president and another defendant; but that it rather appears that the orator's corporation indirectly had the whole benefit, and that the facts found do not present a case where the law will infer fraud from the relationship of the parties or the circumstances by which they were surrounded.

A simple contract may, before breach, be rescinded by the mutual consent of the parties thereto; and the agreement to rescind may be inferred from such circumstances, or from such a course of conduct, as clearly indicates that the parties so intended.

As the master's report shows that the orator and defendant, instead of carrying out the provisions of a certain unsealed written agreement between them, conducted themselves in a manner inconsistent with that purpose by making such material changes in the subject-matter thereof that the contract could not be fulfilled in some of its essential features, this Court will presume, in order to sustain the decree below, that the court of chancery inferred from the facts reported, as it well might, that said agreement was, before breach, rescinded by the mutual consent of the parties thereto.

APPEAL IN CHANCERY, Windham County.    Heard at Chambers, June 4, 1906, on the pleadings, master's report and the orator's motion for a receiver.    *Rowell,* Chancellor.    Decree, that the bill be dismissed with costs to the defendants. The orator appealed.

Besides what is stated in the opinion, the master reported that in 1888, soon after the Rand Avery Company had failed, defendant Crowell came to orator's office and in substance informed orator of said failure; told him that the E. P. Carpenter Company would lose something, but not very much, thereby, and that he, Crowell, would put in money himself to take up the Rand Avery Company "swap notes" as they become due, and if there was any loss he would make it good; that on divers occasions thereafterwards, down to 1892, similar talk was had between orator and defendant Crowell, and orator claimed in that connection that it was understood

between himself and Crowell that Crowell should make good the Rand Avery loss only to the extent which orator should say was right considering the circumstances, which talk on the part of Crowell the orator claimed created a contract and agreement with him for the benefit of the E. P. Carpenter Company and of himself to reimburse the E. P. Carpenter Company for any loss accruing to it out of said Rand Avery note-swapping transactions. Defendant Crowell strenuously denied making any contract or agreement about the matter, but claimed that the substance of the talk between himself and Davenport about the Rand Avery loss in this respect was that no creditor of the E. P. Carpenter Company should lose anything by said swap transactions. The only consideration claimed by orator for this agreement was the statutory liability incurred by Crowell in consenting to these Rand Avery swap transactions, thereby creating an indebtedness of the E. P. Carpenter Company which it was claimed exceeded the statutory amount of indebtedness which said E. P. Carpenter could then contract. The whole Rand Avery indebtedness growing out of these swap transactions was, at the time it was contracted, in excess of the statutory amount of indebtedness permitted by law to said E. P. Carpenter Company, and the said defendant Crowell, then a director, assented thereto. This claimed contract was never reduced to writing, and the defendant Crowell claimed that if one in form had been agreed to, the consideration claimed therefor by the orator was insufficient to support the contract. In 1893, before the commencement of this suit, the E. P. Carpenter Company had practically ceased to exist, and all its property, franchises, and good will had been transferred to a newly organized corporation called the "Carpenter Company," which, with the E. P. Carpenter Company, is a

party defendant to this suit.   The existence of the E. P. Carpenter Company, so far as possible, has become merged in the Carpenter Company.   The orator neither took any part in, nor consented to this transfer and merger.

The prayer of the bill is:   "That your said court restrain said Carpenter Company from issuing to said George E. Crowell, defendant, preferred stock as aforesaid in excess of Twenty Thousand Dollars in amount until he has accounted to the E. P. Carpenter Company for the loss and damage occasioned by the unlawful exchange of the notes and transactions as aforesaid, and that said George E. Crowell, defendant, be restrained from receiving shares of said preferred stock from said Carpenter Company, in excess of twenty thousand dollars in amount, and that he be restrained from in any way disposing of the said preferred shares received from the Carpenter Company, if he has received, beyond twenty thousand in amount until the accounting aforesaid; that said George E. Crowell, defendant, account to the E. P. Carpenter Company for such loss and damage, that said Crowell's claim against the E. P. Carpenter Company be determined, and for such other and further relief as is just."

*A. E. Cudworth* and *H. G. Barber* for the orator.

Since the orator is a stockholder in the E. P. Carpenter Company, and that corporation, on request, has refused to take action for its protection, the orator, as such stockholder may maintain this action in his own name.   *Lewis* v. *The St. Albans Iron Steel Works,* 50 Vt. 477; *Hodges* v. *N. E. Screw Co.,* 1 R. I. 312; *Dodge* v. *Woolsey,* 18 How. (U. S.) 331; *Robinson* v. *Smith,* 3 Paige (N. Y.) 222.

Judicial authority is practically unanimous that a corporation cannot issue accommodation paper for any purpose except its own business, or in any way lend its credit to another person or corporation, even though consideration be paid therefor. And the power can be upheld only to uphold the rights of third parties who have dealt in good faith, such as are in no way involved here.  *Lucas* v. *White Lime Trans. Co.,* 59 Am. Rep. 449; *Nat. Bank of Republic* v. *Young,* (N. J.) 7 Atl. 488; *Webster* v. *Howe Machine Co.* (Conn.) 8 Atl. 482; *Hutchinson* v. *Sutton Manfg. Co.,* 57 Fed. 998; *Hall* v. *Auburn Turnpike Co.,* 87 Am. Dec. 75; 10 Cyc. 1109-1115; *In Re Assignment Mutual &c., Ins. Co.,* 70 Am. St. Rep. 164.

Any officer of a corporation participating in such transactions, or assenting thereto, is liable to the corporation for any resulting loss.  *Hodges* v. *New Eng. Screw Co.,* note 53 Am. Dec. 637; *Winchester* v. *Howard,* 136 Cal. 432; 69 Pac. 77, 89 Am. St. Rep. 153; *Robinson* v. *Smith* (N. Y.) 3 Paige Ch. 222, 24 Am. Dec. 212; *Bosworth* v. *Allen,* 168 N. Y. 157, 85 Am. St. Rep. 667.

Acts which are *ultra vires* not only of the directors, but of the corporation, or when prohibited by positive law, are incapable of actual, much less constructive, ratification. *Durkee* v. *People,* 155 Ill. 354, 46 Am. St. Rep. 340; *Steele* v. *Fraternal Tribunes,* 215 Ill., 190, 106 Am. St. Rep. 160; *Wheeler* v. *Home Saw. &c. Bank* (Ill.), 80 Am. St. Rep. 161; *Lyndon Mill Co.* v. *Lyndon Inst.,* 63 Vt. 581; *Fort Scott Nat. Bank* v. *Drake,* 29 Kan. 311, 44 Am. Rep. 646; Pom. Eq. §964; 10 Cyc. 1070; 17 Am. & Eng. Enc. 164.

In cases of this kind lapse of time is no test of staleness. *O'Brien* v. *Wheelock,* 184 U. S. 450; *Coles, Admr.* v. *Ballard,* 78 Va. 139; *Wessels* v. *Craigs, Admr.,* 80 Va. 22; *Cottrell* v. *Nat. King,* 89 Va. 901; 12 Am. & Eng. Enc. 534.

*E. L. Waterman,* and *Clarke C. Fitts* for the defendants.

A breach of the statute by one director furnishes no consideration for a promise by him to pay debts for another, or to make good any loss he or the company may suffer.  *King, Receiver* v. *Cochran,* 76 Vt. 141; *Barton Nat. Bank* v. *Atkins,* 72 Vt. 33; V. S. 3724.

WATSON, J.   The first question presented is whether defendant Crowell is liable to the E. P. Carpenter Company for loss or damage incurred through transactions of exchanging notes with the Rand Avery Company, a corporation of Boston.

The bill is brought by the orator as a stockholder in the former company, and if the case is otherwise made out, no question is made but that, in the circumstances shown, the bill is properly brought by him.

The E. P. Carpenter Company was organized for business in this State in 1884 with a capital stock of twenty-five thousand dollars, divided into shares of the par value of one hundred dollars each.   It does not appear who all the stockholders were nor how the stock was paid for, except that E. P. Carpenter, the orator, and defendant Crowell were the principal stockholders, and a considerable part of the stock held by them was paid for by their individual notes to the company.   The business of the company was the manufacture of organettes, organs, and later pianos were added..   Soon after the company began business Carpenter became a director and the president thereof, the orator a director and the clerk, and Crowell a director and the treasurer.   The orator and Crowell continued to be directors for the remainder of the time the company was in business, but the orator ceased being clerk

and Crowell ceased being treasurer early in 1889; thereafter Martin Austin, Jr., was clerk, the orator treasurer, and Crowell president. While Carpenter was president he practically managed the business affairs of the company. His connection with the company, except as stockholder, was severed about the time Crowell was made president, and thereafter the business appears to have been managed by the orator and Crowell in connection with Austin who in this respect was the most active of the three.

In 1888, beginning about the last day of May and ending in October, the company exchanged notes with the Rand Avery Company to the amount of about $9,000.00. The Rand Avery Company failed in the latter part of that year, as a result of which the E. P. Carpenter Company lost by reason of being compelled to pay the notes thus exchanged approximately eight thousand dollars. It is contended that the notes so given to the Rand Avery Company and the notes received of it in exchange which the E. P. Carpenter Company indorsed, were in their nature and essence accommodation paper; that the accommodation was extended for the benefit of Crowell and Carpenter, in the "major part" at least, on the one side, and of the Rand Avery Company on the other, none of the notes representing any real business transaction; that the E. P. Carpenter Company had no power to become a party to notes for the accommodation of another person or corporation; and that since Crowell participated in or consented to the transactions in question, he is liable for the resulting loss or damage. On the other hand it is contended by the defendants that the orator by reason of his assent or acquiescence is equitably estopped from taking this position.

It is found that almost from the beginning of its business the E. P. Carpenter Company lacked funds necessary for

a "working capital," and to make up for this, it adopted the practice of obtaining accommodation notes from various parties and also of borrowing checks, giving in exchange therefor its own notes or checks; and that this practice continued until 1890 or later.   These findings show that the corporation from force of circumstances adopted the practice of exchanging paper for accommodation to make up for a deficiency in its funds with which to do business, as early as in 1884 or 1885,—some three or four years before the transactions with the Rand Avery Company,—and this practice was thence continuous for a period extending two years or more after that company failed.   During all this time, as before seen, the orator was a director; and he was the clerk of the corporation until early in the year 1889 when he ceased holding that office and was thereafter the treasurer.   In the office of the company, the place where the meetings of the stockholders as well as those of the directors were held, were the company's books kept in due course of business, and among them were books in which were entered outstanding notes and bills, both payable and receivable, showing among other things the dates of issue and of maturity, the maker and payee; though some of the entries respecting the notes received of the Rand Avery Company were not made at the time the notes were received, but were later.   The report states that the orator had full and free access to these books, did in fact examine them more or less, and knew or ought to have known of the issuing of the notes in question during the period when they were being issued, and that he had actual knowledge of these notes and of their character immediately after the failure of that company.   As far as the case shows, no loss or damage ever resulted from this practice except in connection with the last

named company, and neither regarding the transactions with that company nor regarding those of a similar character had with others were objections ever made by the E. P. Carpenter Company or by any of its stockholders until the bringing of this suit twelve years or more after the practice ceased and more than fourteen years after the transactions were had of which the orator here complains. All of the funds realized from accommodation paper under the practice went to the use of the corporation unless, as the orator claims, it be a portion of the avails of the notes exchanged with the Rand Avery Company, concerning which we will speak presently.

From the facts found by the master in the respects above mentioned, the court below might well have inferred that the orator had full knowledge of the adoption of such practice at the time it took place and acquiesced therein. And to sustain the decree below this Court will presume that such inference was there made. The case of *Burt* v. *British, Etc. Assur. Ass.,* 4 De G. & J. 158, is much on point showing a similar conclusion of fact based upon very like circumstances.

Under our practice of appointing special masters to hear causes in equity on the evidence and report the facts to the Court (V. S. 936-942), such masters are officers of the Court of Chancery and that court may infer such facts from those reported as necessarily or fairly result therefrom. In this respect, reports of such masters stand like those of auditors, concerning which this rule has long been established. *Kimball* v. *Estate of Baxter,* 27 Vt. 628; *Pratt* v. *Page et al.,* 32 Vt. 13.

It is said, however, that knowledge by the orator of the issuing of the notes with the Rand Avery Company is not found by the master, and that the finding that he "ought to

have known" does not reach the situation.     How the case might stand in this respect were the transactions with that company alone to be considered it is unnecessary to inquire; for during the continuance of the practice named it was not necessary for a stockholder who had assented thereto or acquiesced therein to have personal knowledge of all the different transactions had under it in order to be bound by it.     If he would avoid the effect of the practice the burden is on him to show a subsequent withdrawal of his assent or acquiescence before the performance of the acts with the consequences of which he seeks to charge an officer or agent of the company who participated therein.     In *Gregory* v. *Patchet,* 33 Beav. 595, it is said by Sir John Romilly, Master of the Rolls, "shareholders cannot lie by sanctioning, or by their silence at least acquiescing in an arrangement which is *ultra vires* of the company to which they belong watching the result; if it be favorable and profitable to themselves to abide by it and insist on its validity; but if it proves unfavorable and disastrous, then to institute proceedings to set it aside."     Upon the same principle, such stockholders cannot maintain an action against the company's officer or agent who, in the performance of his duties, participated in acts done pursuant to such arrangement, for the loss or damage resulting therefrom.     *Holmes et al.* v. *Willard,* 125 N. Y. 75; *Watts's Appeal,* 78 Pa. St. 370; *McCampbell* v. *Fountain Head R. R. Co.,* 111 Tenn. 55, 102 Am. St. Rep. 731; *Alexander* v. *Searcy,* 81 Ga. 536, 12 Am. St. Rep. 337; *Evans* v. *Smallcombe,* L. R. [3 Eng. & Ir. App.] 249.

It is further urged that the accommodation was extended in the major part for the benefit of Crowell and Carpenter,— not for that of the company.     But we do not think a fair construction of the findings warrants this contention. It is true that

the avails of some of the accommodation notes in controversy, were received by Crowell and charged to him in the account kept with him on the books of the E. P. Carpenter Company, and a part of the avails were had by Carpenter, being charged to him in his account kept by the company, and that during the period covered by these transactions with the Rand Avery Company, the aggregate sums thus received by them which probably were of the avails of those notes equalled the major part of them. Yet the record shows that during all the time the E. P. Carpenter Company was in business it was necessary for it to obtain the indorsement of Crowell on its own notes and on some, if not all, of the notes received of its customers, which were discounted at local banks, in fact that there was a tacit understanding that he should, and he did, indorse such commercial paper. All of the same time the company occupied buildings owned by him, for which he was paid or credited rent. As of January 1, 1888, a settlement was made between him and the company, by which the company's indebtedness to him was found to be $5,191.43, and it gave him therefor its three notes on demand aggregating that sum. The company kept a general account with him and when he received the avails before mentioned they were not applied on his outstanding notes against the company, but were charged to him in the general account and adjusted at their next settlement which was had in February, 1894. It is apparent that the indebtedness from the company to Crowell was constantly and rapidly increasing, for on January 1, 1892, there was due him $19,607.39,—an increase of over fourteen thousand dollars in four years,—and on January 1, 1903, it had reached the sum of $42,494.59. At the annual meeting held in January of each year, beginning with the year 1888, there

was submitted to the directors and stockholders a detailed statement of the financial standing of the company, its debts and liabilities being itemized.    The orator examined each of these statements, from which he knew or was bound to know, that the company was year by year getting more and more in debt to Crowell, yet he neither protested against nor objected to the correctness of any of the statements, and their correctness appeared to be upheld by the books of the company. These facts seem to show beyond question that not only were the accommodation notes for the benefit of the company in the prosecution of its business, and that it in fact so had the benefit of them, but that such was the understanding of the directors including the orator at the time the transactions took place.    There is no finding that Crowell either alone or in connection with any other officer or agent of the company, did anything in respect to these notes, or the avails thereof, which was not in good faith to the company in the performance of his duties as its officer or agent, nor do the facts found present a case where the law will infer fraud from the relationship of the parties or the circumstances by which they were surrounded.    Manifestly the avails received by Crowell, as before stated, were treated by the directors as a payment to him on his account with the company, and as such it was acquiesced in and confirmed by them.    No reason is shown why a court of equity should not now consider it in the same way.

This brings us to the consideration of the second question presented which is, whether the amount of the notes and accounts specified in paragraph one of the written agreement made by Crowell and the orator under date of January 1, 1892, should in equity be charged to the former in his account on

the books of the E. P. Carpenter Company and deducted from the balance then due him from the company, in accordance with the provisions of that agreement. It was there agreed by the parties (1) that their joint notes, and accounts, due to the company, be thereby made an individual matter between them, and the amount of these items on that day, $5,375.49, were to be charged to Crowell on the books of the company and deducted from the balance of the sum which was shown by those books to be due him; (2) that the aforesaid notes and accounts were to be made up and balanced, placed in an envelope with the stock against which the notes were given, and with a copy of the agreement kept in the safe of the company in trust for the parties to the agreement as their interests might appear; (3) that the orator held himself liable equally with Crowell for any possible loss on money loaned the company or indorsements of its notes or business paper, and "he gives his notes to said Crowell as collateral security for this agreement, payable to such amount as may appear to be due in such loss on settlement of the affairs of the company, and also from the effect of the credit above agreed on"; and (4) that the agreement should terminate October 1, 1892.

The master states that the only consideration claimed or shown for this agreement other than any mutual promises disclosed by the agreement itself, as far as Crowell is concerned, was his liability to the company and to the orator as stockholder thereof by reason of the loss to the company on the "Rand Avery Company swap notes" before mentioned, and also the forbearance of the orator to enforce such liability against him. It is found that the orator has not attempted to enforce such liability until the bringing of this suit, and the master states that he is unable to find that this forbearance

was asked for or procured by Crowell and submits to the Court
the question whether the contract has a sufficient considera-
tion.    But whether there was a sufficient consideration to sup-
port the agreement or not is immaterial in the disposition we
make of the case.    Nothing has been done by either party to
carry out the provisions of the contract, although there has
been talk about it between them on various occasions.    The
nature of this talk is not shown.    It appears that when the
agreement was made the parties were liable to the E. P. Car-
penter Company on their joint and individual notes as stated
in the first paragraph of the contract.    The joint note included
therein was for $1,450.    This note the company continued to
hold the same as before until the year 1901, when it was
divided between Crowell and the orator, each giving his note
to the company for his share.    It further fairly appears that
the number of shares of stock in the company to which the
orator claims to be entitled legally or equitably is one hundred
twenty, and that subsequent to the making of the agreement
he pledged sixty-nine of the shares as collateral security to
various other persons and institutions and deposited the re-
maining shares with still another person in trust.    This is the
condition of the stock at the present time.

Thus it appears that instead of carrying out the provisions
of the contract, the parties were conducting themselves in a
manner inconsistent with that purpose by making material
changes in the condition of the subject-matters thereof, by
reason of which the contract could not be carried out by them
in some of its most essential features.

In these circumstances this Court will presume that the
court below inferred from the facts reported, as it well might,

28

that the agreement of January 1, 1892, was before breach rescinded by the mutual consent of the parties and thereby rendered without force. This the parties were competent to do (*Blood* v. *Enos,* 12 Vt. 625, 36 Am. Dec. 363; *Flanders* v. *Fay,* 40 Vt. 316), and the agreement to rescind may be shown by such circumstances, or by such a course of conduct, as clearly indicates that the intention of the parties was that it should so operate. *Wheeden* v. *Fisk,* 50 N. H. 125.

It follows that the orator is entitled to no relief under the contract.

*Decree affirmed and cause remanded.*