G. W. Bradley v. Amos N. Blandin and Somerset Land Company.

May Term, 1919.

Present:  Watson, C. J., Powers, Taylor, Miles, and Slack, JJ.

Opinion filed May 8, 1920.

*Trial—Proving Defence in Plaintiff's Opening Case by Cross-examination — Evidence — Harmless Error—Hearsay—Impeaching Testimony on Cross-examination—Evidence of Acts to Further Sale—Immaterial Evidence—Improper Remark by Party—Remarks by Counsel—Error Cured by Subsequent Testimony—Objection Without an Exception—Conclusiveness of Decision on Prior Appeal—Contents of Destroyed Letters Question of Fact—Abandonment of Contract Largely Question of Intention—Burden of Proving Abandonment of Contract—Question Not Raised Below Not Considered—General Exception to Charge Unavailing—Failure to Charge on Agent's Liability—Duty to Charge on All Essential Elements—Judgment Against Two Reversed In Toto to Prevent Injustice to One—Motion to Set Aside Verdict—Duty of Court to Exercise Discretion.*

1. An issue which is a matter of defence cannot of right be brought forward in the plaintiff's opening case by cross-examination.

2. The admission of a hearsay statement of a material fact which had already appeared and about which there was no dispute was harmless.

3. In an action for a commission on the sale of standing timber, where one of the defendants testified on direct examination that O. had nothing to do with the sale, it was not error to permit plaintiff to show on cross-examination, as tending to contradict the witness, that the buyer's representative told the witness that O. called his attention to the lands and told him they were for sale.

4. The exclusion of evidence was harmless where the fact was shown by other testimony and there was no controversy about it.

5. Testimony by O. that the buyer's representative called at his office and told him that he had been sent out to look up a

tract of land, etc., being introductory merely, was not objectionable as being hearsay, and was too colorless to be harmful.

6. The plaintiff being entitled to a commission if certain parties were instrumental in effecting a sale, evidence of what he did at their suggestion with reference to determining the right to run timber or pulp down a stream was properly received as descriptive of what he did under the agreement to further the sale.

7. Evidence as to change of plans about the property sold that had no legitimate tendency to contradict the plaintiff's claim as to the terms of the commission contract was properly excluded.

8. An improper remark by the plaintiff concerning a certain letter about which he was being cross-examined was harmless, where the observation was a natural inference to be drawn from the letter, and there was no apparent design to prejudice the defendants.

9. The remark of counsel addressed to the court while discussing the admissibility of certain evidence, that not a word was said about a certain matter at a former trial, if improper, was cured by the subsequent testimony of one of the defendants to the same thing in cross-examination.

10. No question was raised as to a remark by plaintiff's counsel that certain conduct of a defendant was suspicious where no exception was saved.

11. Where it appeared that the plaintiff's letters to one of the defendants had been destroyed by fire, and that he had not retained copies of the same, the remark by his counsel in argument that he had not had the benefit of a fire was not prejudicial, it not appearing in what connection the remark was made.

12. Where a case has been to the Supreme Court, the decision there is conclusive of questions then decided, unless it appears that the evidence pertinent to the issue at the retrial was materially different.

13. The question of whether the plaintiff abandoned the contract relied upon was largely one of intention, and, the letters relied upon as evidence of an abandonment having been destroyed, and the evidence of their contents being conflicting, the question was one of fact and not of law.

14. The burden of proving such abandonment of the contract by the plaintiff was upon the defendants.

15. Although the claimed contract was quite unusual, and defendants' claim that it was improbable would be entitled to considerable weight by the triers of fact, the evidence was sufficient to make the question of liability one for the jury.

16. The claim that the plaintiff acted for both parties to the sale, and so not entitled to a commission, will not be considered as a ground for reversing the case, when not raised below.

17. Where the court charged on the subject-matter of certain requests to charge, an exception to the court's failure to charge and to the charge as given in respect to the matters covered by them, without pointing out wherein the requests were not complied with, is unavailing.

18. Where a certain letter did not have the conclusive effect claimed for it, the defendants were not entitled to a charge that it "placed the parties on a new footing" and "the plaintiff is not entitled to recover."

19. In an action against a corporation and its agent on a joint and several undertaking by them, where the evidence against both defendants was not the same, it was error for the court to fail to charge under what circumstances the agent could be held.

20. It is the duty of the court to instruct the jury upon every essential part of the case; and an exception to its failure to charge respecting such matters, though not requested, is well taken.

21. Where there are two defendants, and the judgment is based upon a cause of action of such a nature that it will embarrass one in his defence on a new trial, if it be reversed as to him and sustained against the other, the Court will, to prevent possible injustice, reverse the judgment in toto, and grant a new trial to both.

22. A motion to set aside a verdict as against the weight of the evidence is addressed to the discretion of the trial court, and its action can only be reversed when it appears that it has failed to exercise or has abused its discretion.

23. It is a wrong conception of the function of a motion to set aside a verdict, and of the court's duty in that respect, that a verdict should not be set aside when a motion for a directed ver-

dict has been overruled, as that would be a withholding of the discretion which the court is called upon to exercise.

ACTION OF CONTRACT to recover a commission on the sale of certain standing timber. Answer denying the contract alleged in the declaration, and setting up a general revocation of the same. Trial by jury at the June Term, 1918, Bennington County, *Stanton*, J., presiding. Verdict and judgment for the plaintiff. The defendants excepted. The opinion states the case.

*Harvey, Maurice & Whitney* and *Robert E. Healy* for the defendants.

An improper answer or remark made by a party is error. *Holman* v. *Edson*, 81 Vt. 49; *Herrick* v. *Town of Holland*, 83 Vt. 502; *Fadden* v. *McKinney*, 87 Vt. 316; *Gilfillan* v. *Gilfillan's Est.*, 90 Vt. 94; *In re Martin's Est.*, 92 Vt. 362; *Morris* v. *Moone*, 100 Atl. 45.

The relation of the defendants and plaintiff was that of principals and broker. *Caddigan* v. *Crabtree*, 179 Mass. 474, 61 N. E. 37, 55 L. R. A. 77, 88 A. S. R. 397; *Caddigan* v. *Crabtree,* 186 Mass. 7; *Sibald* v. *Bethlehem Iron Co.*, 83 N. Y. 378; *Potts* v. *Turner*, 6 Bing. 702; *Hanley* v. *Shaffer*, 177 Ala. 636; *Leathers* v. *Canfield*, 117 Mich. 277, 45 L. R. A. 33.

*Batchelder & Bates* and *Frank C. Archibald* for the plaintiff.

The trial court not only has the power, but it is its duty, to amend or modify a verdict so as to put it in proper legal form or to make it express the actual intent of the jury, provided it does not necessitate a substantial alteration of the facts found. *Porter* v. *Rummery*, 10 Mass. 64; *Wolfsan* v. *Eyster*, 7 Watts, 38; *Foster* v. *Caldwell's Est.*, 18 Vt. 176; *Ashton* v. *Touhey*, 131 Mass. 26; *Lincoln* v. *Iron Co.*, 13 Otto, 412; *Laber* v. *Cooper*, 7 Wall. 565; *Snyder* v. *U. S.*, 12 U. S. 216; *Hopkins* v. *Orr*, 124 U. S. 510; *Baker* v. *Smith*, 4 Yeates (Pa.) 185; *Cormick* v. *Meason*, 1 S. & R. (Pa.) 97; *Cluggage* v. *Duncan*, 1 S. & R. 109; *Peddle* v. *Hollinshead*, 9 S. & R. 277.

TAYLOR, J. The action is assumpsit to recover a commission on the sale of certain standing timber. The case has been here

before, twice on questions of pleading and once after a trial on the merits.    89 Vt. 542, 95 Atl. 894; 91 Vt. 472, 100 Atl. 920; 92 Vt. 313, 104 Atl. 11.    At the former trial a verdict was ordered for the defendants.    This action was predicated upon the view that certain letters appearing in evidence constituted a valid revocation of the plaintiff's authority which, in the circumstances, barred a recovery.    Reviewing the holding on plaintiff's exceptions, it was held that, as the defence stood upon the general issue, the question of revocation was not properly in the case, and that the court erred in ordering a verdict upon an issue outside the scope of the pleadings.    Moreover, it was adjudged that the burden of proof on the question of revocation was on the defendants; that one of the essential elements of a valid revocation is the good faith of the principal; and that this was a question of fact, and should have been submitted to the jury. 91 Vt. 472, 100 Atl. 920.    The retrial had on amended pleadings resulted in a verdict and judgment for the plaintiff, and the case is now here on exceptions by the defendants.

The salient facts developed at the retrial vary slightly, if at all, from those outlined in the former opinion.    It appeared that the Somerset Land Company owned the equity of redemption in a tract of timber land consisting of 12,000 to 15,000 acres situated north of the Stratton turnpike, and known as the Manchester Slope or the Battenkill lands, on which the Connecticut Valley Lumber Company held a mortgage, and about 13,000 acres south of the turnpike.    The Deerfield Lumber Company, of which defendant Blandin was president, owned a still larger tract also situated south of the turnpike.    The combined area of these holdings was something like 45,000 acres. For reasons that are not here material it was deemed advisable to dispose of these lands together, although they were not situated for convenient operation as one tract.    The outlet of the Manchester slope is the valley of the Battenkill, while the land south of the turnpike is more accessible from the valley of the Deerfield.    The plaintiff was thoroughly familiar with the Manchester Slope, its location and boundaries, the timber thereon, and the routes by which the timber could be removed.    He had been extensively engaged in the lumber business, had lumbered on this tract, and at one time owned a considerable portion of it. He had had negotiations with one Ostrander, representing Finch, Pruyn & Co., with reference to the purchase of a smaller tract

in the vicinity, which was rejected because not large enough. He had learned that the Somerset Land Company might sell the Manchester Slope, and called it to Ostrander's attention. He asked the Land Company for a price on all of the lands that "can come this way," referring to Battenkill Valley, and after some negotiations was informed that defendant Blandin would arrange to see him with reference to the matter. Accordingly, Blandin called on the plaintiff May 25, 1910, and, as it is claimed, made the agreement on which this action is based.

Defendant Blandin testified that their negotiations related to the whole 45,000 acres, and nothing less, and that the agreement was that if the plaintiff effected the sale of the whole tract to Finch, Pruyn & Co. for $1,000,000, he should receive a commission of two and one-half per cent. The plaintiff's version of the agreement was this in substance: He was to introduce Ostrander to Blandin; was to show the property to him and Finch, Pruyn & Co.; was to take them over it and point out the lines and boundaries of the tract and the ways to get onto it and off from it. If Ostrander or Finch, Pruyn & Co. bought the land or any part of it, or the timber thereon or any part of it, or should be instrumental in effecting any sale to other parties, the plaintiff was to have a commission of two and one-half per cent., which Blandin bound himself personally with the Somerset Land Company to pay. Plaintiff's evidence tended to show that he fully performed his part of the agreement before the attempted revocation referred to above; and it is claimed that it further tended to show that the subsequent sale of the standing timber on the Manchester Slope to the Rich Lumber Company was in a measure influenced by Ostrander and the Finch, Pruyn & Co., and so within the scope of the contract with the plaintiff.

[1] The plaintiff was cross-examined concerning three letters written to him by Blandin in November and December, 1911, relied upon by the defendants as evidence of a revocation of such authority as the plaintiff had in the premises. They were admitted without objection as a part of the cross-examination. It was observed when the first letter was read to the jury that this and the other letters were signed "Deerfield Lumber Company, A. N. Blandin, President." It was thereupon objected that the letters were immaterial, not being the letters of the Somerset Land Company, nor of Blandin personally. Pending an offer to show later that the land referred to in

the letters included the Manchester Slope, the court postponed further reading to the jury. After some further cross-examination of the plaintiff the question of the admissibility of the letters again came up. Against the defendants' objection, to save possible error in receiving them as the evidence then stood, the court struck off their admission as exhibits "for the present at least until something more is shown about them." Following this they were severally offered as part of and in connection with the plaintiff's cross-examination, and for the time being excluded, the court saying, "you can renew your offer later, if you desire to do so." The defendants rely upon exceptions then taken, but they do not disclose reversible error. Later in the defendants' case, and after connecting evidence had been introduced, the letters were again offered as exhibits and admitted. Thus, the defendants had the full benefit of them as independent evidence. Their exclusion as part of the plaintiff's cross-examination did not violate the rule laid down in *Stiles* v. *Estabrook*, 66 Vt. 535, 538, 29 Atl. 961, for the letters contained nothing not admitted in the cross-examination. The plaintiff was inquired of fully as to their contents and his understanding thereof, and gave answers favorable to the defendants. Moreover, after the letters were admitted in evidence, the defendants availed themselves of an opportunity to further cross-examine the plaintiff with reference to them. Besides, it should be borne in mind that the issue of revocation was a matter of defence, which could not of right be brought forward in the plaintiff's opening case. We do not find it necessary to consider whether the court erred in the rulings excepted to, as we fail to find that the defendants were prejudiced thereby, in view of subsequent events.

[2, 3] After the negotiations for the sale to Finch, Pruyn & Co. fell through, the International Paper Company became a prospective customer for the Battenkill lands. Finding the later negotiations embarrassed by the fact that Finch, Pruyn & Co. had rejected the proposition after thorough examination, Ostrander was employed to conduct the dealings with the International Paper Company on a commission. Plaintiff's evidence tended to show that this employment was later enlarged, and resulted in bringing the Rich Lumber Company into the transaction. Blandin testified in his direct examination that one Richard Hanley, representing the Rich Lumber Company, called

on him, said he had heard about the Battenkill lands, and opened the negotiations that resulted in the sale of the stumpage to that company. In this connection he testified that Ostrander did not make an appointment for the meeting with the Rich Lumber Company or their representatives, and that he had nothing to do with Ostrander in connection with the sale. Against the objection that it was hearsay, plaintiff was permitted to show in cross-examination that Hanley told the witness that Ostrander called his attention to the Battenkill lands and told him they were for sale. It had already appeared, and the fact was not in dispute, that Ostrander brought these lands to Hanley's attention, and gave him a description of them and what the result of the Finch, Pruyn & Co.'s investigations had been. It is too apparent to require comment that the defendants could not possibly have been harmed, if, as they claim, the statement was admitted as evidence of the fact stated. But the fair construction of the record is that the court admitted it as tending to contradict the testimony of the witness given in direct examination, where he, in effect, says that, so far as he knew, Ostrander had nothing to do with the sale to the Rich Lumber Company. This exception is without merit.

[4] In Blandin's direct examination he was asked if there was not difficulty in respect to the disposition of the lands to the International Paper Company. The question being excluded as immaterial, the defendants offered to show that the trouble was that the refusal of Finch, Pruyn & Co., to purchase the property had given it "a black eye," because of that the International Paper Company turned the proposition down, and that was how Ostrander again came into the matter. But here again the exception does not present reversible error. Not only did the witness presently testify without objection that he went to Ostrander on account of the difficulty referred to, but all that the defendants offered to show and more appeared in Ostrander's testimony introduced by the plaintiff, and there was no controversy as to why Blandin employed Ostrander in reference to the matter. If any part of the offer was material, its exclusion was harmless error.

[5] Defendants objected generally to the answer in Ostrander's deposition to the effect that just about the time the president of the International Paper Company notified him that the company could not take the land at that time Mr. Han-

ley, the Wood-Lands Manager of the Rich Lumber Company, called at witness' office and told him that he had been sent out by that company to look up a tract of land; that they had finished cutting where they were located, and wanted to move their mill to another place where they could get stock. The objection now urged that it was hearsay is not available. The recital was merely introductory, and in any event was too colorless to be harmful.

[6]   Against a general objection the plaintiff was permitted to testify as to what he did at the suggestion of Ostrander, or the Finch, Pruyn & Co., with reference to determining the right to run timber or plup down Lye Brook. It was properly received as part of the evidence descriptive of what he did under the agreement to further the sale. If not expressly stipulated, it was implied in the general undertaking to influence the parties to buy the land.

[7]   Three exceptions are argued that relate to the admissibility of evidence concerning the negotiations between Blandin and Rich and between Blandin and the mortgagees relative to the sale of the stumpage instead of the sale of the land. Evidence was offered relative to the conditions as to payment under which the mortgagees finally consented to a sale of the stumpage. It was also offered to show by Rich that he refused to buy the lands and that Blandin at first refused to sell the standing timber, saying he would have to take the matter up with others interested before he could consider selling the stumpage, and that later, at a conference between the mortgagors and mortgagees, the contract of purchase was consummated. Rich was further asked whether the fact that the Connecticut Valley Lumber Compay held a mortgage on the lands "was brought into the deal." In reply to a question by the court how that was material, counsel said: "They had an interest in the lands, and was a party to the transaction; the mortgagees had all the money; the Somerset Land Company never received a penny." The question and offers were excluded as immaterial, and we think rightly so, for the evidence would have no legitimate tendency to contradict the plaintiff's claim as to the terms of the contract. It otherwise appeared, and was not controverted, that the Connecticut Valley Lumber Company held a mortgage on the whole tract, and that the parties interested deemed it advisable to close out the several holdings as a joint enterprise. The fact that subsequent events

brought about a change of plans would not make any less probable the terms of the commission contract as testified to by the plaintiff.

[8]    During the cross-examination of the plaintiff he was being inquired of as to the contents of letters written to him by Blandin, of which the letters from Blandin relied upon as a revocation of the commission contract purported to be replies. In this connection he was handed the last of the three letters and asked to read it to himself, apparently to call to his attention that it was written in reply to a letter received from him. There was no question pending. The direction to read the letter was followed by the witness' observation, "it was evidently undertaking to get out of this agreement, wasn't it, Mr. Healy?" The examiner asked for an exception to the comment, and that it be stricken from the record. The court directed that an exception be noted, and admonished the witness to confine himself to the questions. It would seem that no special significance was attached to the incident at the time; nor was there any apparent design to prejudice the defendants, for the observation was a natural inference to be drawn from the letter, which read: "Replying to your favor of December 18th—I don't know what you mean by the proposition I made you for the entire property as I have written you repeatedly that the property is not for sale. Hope you will consider this as final and conclusive." The letter was in evidence, and the defendants argued from it that the contract was revoked. While the remark is not justified, we are unable to find that it constituted reversible error. See *Sanders* v. *Burnham,* 91 Vt. 480, 100 Atl. 905.

[9, 10]    In course of the discussion to the court as to the admissibility of the letters already referred to as evidencing a revocation of the contract, referring to a claim that on the evidence the Deerfield Lumber Company was acting in the transaction as agent of the Somerset Land Company, counsel for plaintiff said, "At the last trial there was not a word said about this agency." Defendants' counsel interrupted with an objection to the statement, and the court allowed an exception. The situation is relieved of any embarrassment by the fact that later Blandin testified to the same thing in cross-examination. It is unnecessary to consider how the question would otherwise have been affected by the fact that the argument was addressed to the court and not the jury. Elsewhere in discussing an objection to

a question asked Blandin in cross-examination with reference to letting a witness go without notice to the plaintiff, counsel said, "We claim it was somewhat suspicious conduct on his part." This is argued as reversible error, but the question was not raised as no exception was saved.

[11]    The defendants were allowed an exception to the statement of counsel in argument to the effect that the plaintiff had not had the benefit of a fire. The record does not disclose in what connection this was said. It had appeared in evidence, as accounting for the nonproduction of plaintiff's letters to Blandin, that the latter's papers and letters had been burned in a fire which destroyed the office of the Deerfield Lumber Company, and that the plaintiff had not retained copies of his letters; so while Blandin's letters were able to be produced, the other side of the correspondence rested in parol testimony and was a matter in controversy. It would be fair comment that the plaintiff was placed at a disadvantage in this regard by the Deerfield Lumber Company's fire. In the absence of the setting in which the statement appeared, we cannot say that the rights of the defendant were injuriously affected by stating the proposition the other way. See *Russ* v. *Good,* 92 Vt. 202, 207, 102 Atl. 481.

[12]    The defendants argue various exceptions taken to the overruling of their motion for a directed verdict. They discuss at considerable length the question of revocation, and insist that the court should have sustained their motion on that ground. The argument fails to take into account the fact that the former decision (91 Vt. 472, 100 Atl. 920) is conclusive of questions then decided, unless it is made to appear that the evidence pertinent to the issue at the retrial was materially different. *Barclay* v. *Wetmore & Morse Granite Co., ante* p. 227, 102 Atl. 493. No attempt is made to point out wherein the evidence is different in legal effect. In fact, it sufficiently appears that the evidence relied upon to support the claimed revocation was substantially the same at both trials. This being so, the former decision that the burden of proof on the question of revocation was on the defendants, and that on the evidence the question of good faith was for the jury, is the law of the case, and the questions will not now be reconsidered.

[13, 14]    Under four grounds of the motion the defendants argue the claim that the plaintiff abandoned the contract on

which he now relies before the negotiations leading up to the sale to the Rich Lumber Company were begun. As evidence of this they rely upon plaintiff's letters to Blandin to which the claimed revocation letters were replies. If the writing of these letters and their contents had a tendency to show an abandonment of the contract, a question we are not called upon to decide, it was a question of fact and not of law. The evidence of the contents of the letters was more or less conflicting. Whether the contract had been abandoned was largely a question of intention to be inferred from the facts and circumstances proved, and the burden of the issue was upon the defendants. At best it could not be said that the evidence was of a character to admit of but one conclusion. See *Davenport* v. *Crowell*, 79 Vt. 419, 433, 65 Atl. 557; *Boyden* v. *Hill*, 198 Mass. 477, 85 N. E. 413; 13 C. J. 762; 1 R. C. L. 7-8.

[15]   The remaining grounds of the motion are: (1) That on all the evidence the plaintiff is not entitled to recover; (2) because the evidence shows that the sale was not made by the plaintiff; (3) because the evidence shows that the sale was not made by Ostrander; (4) because the evidence shows that no effort was made by Ostrander pursuant to any authority from the defendants or either of them. However, on the evidence all save the first of these grounds fail to reach the real point in the plaintiff's case. Under the agreement testified to by him it was not necessary to a recovery that he made the sale himself, nor that Ostrander should make it, nor that authority from the defendants to Ostrander be shown, if the payment of the commission should depend upon his being instrumental in bringing about the sale. Under plaintiff's version of the contract the commission would be earned if he performed the service agreed to and Ostrander, to whom he was introducing the defendants, was instrumental in bringing about a sale. The claimed contract was quite unusual, and the defendants' claim that it was improbable would be entitled to considerable weight with the triers of fact; but it is not seriously claimed that plaintiff's evidence did not tend to establish the facts essential to a recovery. It would serve no good purpose to enter upon an extended review of the evidence. We think it must be held that it made a case for the jury on the question of liability.

[16]   Defendants make the point in their brief that the plaintiff was not entitled to recover because of an admission in

cross-examination that he wasn't acting as an agent for the Somerset Land Company and that he never worked for that company or Blandin, but was working under the direction of Ostrander, the argument being that an agent who acts for both parties is not entitled to a commission. We have no occasion to investigate this claim as it was not advanced below as a ground of the motion. See *Nichols* v. *C. V. Ry. Co., ante* p. 14, 109 Atl. 905, and cases there cited.

[17, 18]   The defendants submitted fifteen requests to charge, and excepted to the court's failure to charge and to the charge as given in respect to the matters indicated in six requests designated by number. Only one of these requests requires special attention. By an oft-repeated rule the exceptions relating to the others were too general to be available. The court charged on the subject-matter of the requests and it is not claimed that the charge in those respects was wholly wrong. Failure to point out wherein the requests were not complied with defeats the exceptions. *Duprat* v. *Chesmore, ante p.* 218, 110 Atl. 305, and cases there cited. But a study of the charge with a view to these requests discloses that the defendants have no just ground of complaint. The remaining request was as follows: "If the letter of May 29, 1911, referred to the property in question, it put the parties on a new footing, and the plaintiff or Ostrander not having found a customer for the property by July 1, 1911, the plaintiff is not entitled to recover." Referring to this request, counsel added, "especially excepting to the failure of the court to charge that the letter of May 29, 1911, placed the parties on a new footing." According to the defendants' evidence, the letter referred to was a reply from Blandin to plaintiff's inquiry whether the property was still for sale. It read: "I will meet your people almost any time after this week. The R. R. up to our mill is to be made a standard gauge this summer, I am told, and this will add very materially to the value of the property. Our price is $1,000,000, terms of payment reasonable. This price good until July 1st unless sold in the meantime." Confessedly this letter referred to the whole tract, while the plaintiff was relying upon a claimed agreement relating to the Manchester Slope. The defendants were not entitled to have the request complied with. The letter was an important piece of evidence to be considered in connection with the other evi-

dence in the case, but it did not have the conclusive effect claimed for it.

[19-21]    The defendants excepted to the manner in which the question of liability was submitted. The exception was to the failure of the court to charge under what circumstances the defendant Blandin could be held, the specific objection being that "the defendants were coupled all the way through." The case was submitted to the jury upon the theory that a recovery, if one was had, could only be against both defendants. It was upon this theory that the court treated the verdict, which was in form a verdict against one defendant, as a verdict against both, and rendered judgment accordingly. Nowhere in the charge did the court refer to Blandin's claim that he was not personally liable, which was a proper issue within the pleadings. The declaration charges a joint and several undertaking on the part of the defendants, to which, among other things, the general issue was pleaded. Certain of the evidence was received against the Somerset Land Company alone. Blandin denied the agreement testified to by the plaintiff, and especially that he agreed to be obligated personally. It cannot be said that the evidence against both defendants was the same. It was manifestly less probable that Blandin as agent assumed personal liability than that he obligated his principal for whose sole benefit the claimed contract was being made. It is quite possible that the jury under more explicit instructions would have found that he made the contract as testified to by the plaintiff in all respects, except that he did not assume personal liability. This being so, the charge was not sufficiently definite in the respect complained of. See *Hagard* v. *Smith,* 21 Vt. 123, 129. The question was saved, though not covered by the defendants' requests. It was the duty of the court to instruct the jury upon every essential part of the case; and an exception to its failure to charge respecting such matters, though not requested, is well taken. *Rowell* v. *Town of Vershire,* 62 Vt. 405, 409, 19 Atl. 990, 8 L. R. A. 708; *Moore* v. *Duke,* 84 Vt. 401, 410, 80 Atl. 194. This error necessitates a reversal as to Blandin, and we think in the circumstances that justice requires a general reversal. Where there are two defendants, and the judgment is based upon a cause of action of such a nature that it might work injustice to one, if it were to remain intact against him while reversed for error as to the other, the court may, to prevent possible in-

justice, reverse the judgment *in toto,* and grant a new trial as to both. *Washington Gaslight Co.* v. *Lansden,* 172 U. S. 534, 556, 43 L. ed. 543, 552, 19 Sup. Ct. 296. Especially should this be done when, as here, the defendant who is entitled to the new trial would be embarrassed in his defence if the judgment against the other defendant is allowed to stand. The evidence respecting Blandin's liability is of such a character that he would be seriously handicapped, if compelled to enter the trial with the fact already determined, notwithstanding his testimony to the contrary, that his principal was liable. For a case somewhat in point see *Whitcomb* v. *Dickinson,* 169 Mass. 16, 47 N. E. 426. Other exceptions to the charge are argued, but need not be noticed, as it is not probable that the same questions would arise on a new trial.

[22, 23] The defendants argue several exceptions taken to the overruling of their motion to set aside the verdict. In view of the disposition to be made of the case, it is unnecessary to review the exceptions in detail. One question presented is of sufficient general interest to be noticed in passing. Under an appropriate ground of the motion, the defendants argue the claim that the verdict was against the evidence, which means no more in this connection than that it was against the weight of the evidence. This is a question clearly addressed to the discretion of the trial court, and concerning which this Court on review has no discretionary power. The action below can be reversed only when it is made to appear that the trial court has failed to exercise or has abused the discretion with which it alone is clothed. *French* v. *Wheldon,* 91 Vt. 64, 68, 99 Atl. 232, and cases there collected. The claim is made in argument that the trial court did not exercise its discretion in disposing of the motion, but treated the disposition of the motion for a directed verdict as controlling. It is not necessary for present purposes to consider whether it sufficiently appears that the question was not properly handled by the court. We need only say that we are entirely agreed with the defendants' counsel that it is a wrong conception of the function of a motion to set aside a verdict, and of the court's duty in that regard, that a verdict should not be set aside when a motion for a preemptory instruction has been overruled. This would be a withholding of the discretion which the court is called upon to exercise. It could well be that a party's evidence made a case for the jury while it was so

outweighed by the countervailing evidence that, in the exercise of its supervisory powers, the trial court should not hesitate to set aside a verdict in his favor. See *Parker* v. *B. & M. R. R.*, 84 Vt. 329, 349, 79 Atl. 865.

The defendants attack the form of the verdict by several exceptions, but it is not necessary to the disposition of the case, nor for the purposes of a new trial, to consider whether the court erred in treating the verdict as though amended and against both defendants.

*Judgment reversed, and cause remanded.*