**Dutch Hill Inn, Inc. v. Harry Patten, The Heatwellville Restaurant, Inc., and The American Land Development Company, Inc.**

[303 A.2d 811]

No. 60-72

Present: Shangraw, C.J., Barney, Smith, Keyser and Daley, JJ.

Opinion Filed April 3, 1973

*Waldo C. Holden, Esq.*, and *Harold J. Gilbar, Jr., Esq.*, Bennington, for Plaintiff.

*Stephen H. Gilman, Esq.*, Bennington, for Defendant.

**Keyser, J.** This case was heard below on defendant Patten's motion for the entry of "Settled and Discontinued." The motion was grounded on a release executed in consideration of the payment of $500.00 by James Voris and Nancy Voris, individually, and as the principal stockholders (all but three qualifying shares) of the plaintiff corporation. The court declared the release null and void, ordered the return of the $500.00 and placed the cause on the calendar for further proceedings.

The cause then came to this Court on petition of the defendants to appeal as provided by V.R.A.P. 5(b)(2) on the single issue following:

> "Is a general release executed by the plaintiff in the presence of the defendant's attorney who had prepared the same void or merely voidable because the plaintiff's attorney was not present at the execution of such release, although the terms thereof had been previously agreed upon between the parties in the absence of either of their attorneys"

The following facts about which there is no dispute are shown by the record.

This action was before this Court in an earlier appeal after trial on the merits. The opinion was filed on October 5, 1971, and reported in 129 Vt. 466, 282 A.2d 815. Defendant Patten was one of the principal stockholders in the defendant corporations. The Pattens operated the Heartwellville Lodge in Readsboro, Vermont. James Voris and his wife, Nancy, owned all of the fifty shares of capital stock of the plaintiff corporation excepting three qualifying shares. These were issued to plaintiff's attorney, his secretary, and a realtor in order to qualify the corporation for a liquor license. Mr. Voris was president and his wife was secretary and treasurer.

On Sunday evening, October 17, 1971, as a result of the Vorises being in the restaurant at the Lodge, defendant Patten had a visit with them. Among other topics of conversation, they discussed a settlement of this suit. As a consequence it was mutually agreed that Patten was to pay the Vorises $500.00 to "settle the case, wash it, and get rid of it." It was agreed that the next morning the Vorises would go to the law office of Robert Manuel, Patten's counsel in North Adams, Massachusetts. Patten was to call Mr. Manuel to have him draw a release for signature by the Vorises and give them the $500.00 in settlement of the case.

The following morning, October 18, 1971, as agreed, the Vorises went to attorney Manuel's office where the agreement was reduced to writing in the form of a general release. Mr. Voris testified that while waiting for the paper to be typed, they chatted with Mr. Manuel "about a few things" and when it was brought in Mr. Manuel asked them, "Sure you want to sign this?" and he said, "Yes."

Mr. and Mrs. Voris then signed the release and acknowledged it under oath "to be their free act and deed." By the terms of the instrument the Vorises were signing "individually and as stockholders of Dutch Hill Inn, Inc." By the instrument the defendants were released

"against any and all claims that the undersigned (Vorises), individually and as stockholders and officers of the Dutch Hill Inn, Inc., have or may have against the said Harry S. Patten, a/k/a Harry Patten, The Heartwellville Restaurant, Inc. and American Land and Development Co., Inc., a/k/a American Land Development Company, Inc., in law or in equity, liquidated or unliquidated, from the beginning of the world to the date hereof, and more particularly from all claims as recited in Chancery Proceeding #3891, in the Bennington County Court, . . . ."

The testimony of Mr. Voris shows that the Dutch Hill corporation had few formal meetings after its organization meeting. He said when the Dutch Hill business was moved to Heartwellville Lodge with Patten there was no formal meeting of the Dutch Hill corporation, simply a discussion between

himself and his wife. And he admitted they had done some things "not according to Hoyle." He also said "I guess I have done quite a few things not exactly as corporation law." The tenor of his testimony indicates that the business of the corporation was conducted by the Vorises more or less on a personal basis.

On October 18, 1971, none of the parties involved in the settlement agreement had any knowledge of the Supreme Court decision filed on October 5, 1971. A check for $500.00 payable to "James Voris and Nancy Voris" was delivered to and accepted by them in exchange for the signed release. The face of the check bore the notation "Settlement of Dutch Hill Inn, Inc., case." The check was immediately endorsed and cashed at a bank in North Adams. The Vorises were given a duplicate copy of the release and in the afternoon they went to see Mr. Holden, their attorney in Bennington.

On December 30, 1971, attorney Manuel received a letter from plaintiff's attorney with a check enclosed for $500.00 which purported to repudiate the settlement made between the Vorises and Patten. The check was not accepted by Manuel and he returned it the same day to attorney Holden. In the meantime on December 7th, defendants' Vermont attorney had filed the motion to enter the case "Settled and Discontinued."

After hearing on the motion the court made its entry order, subparagraphs 2(d) and (e) of which read as follows:

"d. While there was no fraud on the part of the agents or attorneys for any of the corporate parties, the release, prepared by attorney Manuel, without the knowledge of plaintiff's attorney or attorney Gilman, should have been submitted to the former before execution by the Vorises.

e. Therefore, the release (DM Ex 1) is declared null and void; plaintiff's agents are ordered to return the sum of $500.00 to attorney Manuel; and this cause shall be placed on the calendar for further proceedings in accordance with the opinion of the Vermont Supreme Court."

It is very evident that the court held the release was null and void on the basis of its finding in subparagraph (d),

*supra.* Thus the plaintiff argues the release is void as against public policy and cites the Code of Professional Responsibility of the American Bar Association, DR 7-104(A)(1). This section provides that an attorney of a client shall not communicate or cause "another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so."

■ ■ Public policy, however, strongly favors settlement of disputed claims without litigation. Such policy prohibits the admission of evidence of unaccepted offers of settlement of disputed claims. C. McCormick, Evidence § 274 (2d ed. E. Cleary 1972); E. Morgan, Basic Problems of Evidence 209 (1962). The reason for this policy is simply to encourage compromise between the adverse parties before resorting to the judicial system to resolve disputes.

■ In order to avoid the effect of this release, the plaintiff must show that to enforce it would be "cruel or shocking to the average man's conception of justice", *Sipes* v. *McGhee,* 316 Mich. 614, 25 N.W.2d 638, 642 (1947), or "injurious to the public or against the public good." *Veazy* v. *Allen,* 173 N.Y. 359, 66 N.E. 103, 105 (1903).

The facts surrounding the execution of this release as shown by the record do not bear out plaintiff's contention. The terms of the agreement expressed in the release were concluded by the parties themselves the night before they were formalized on October 18th without any intervention by Mr. Patten's attorney. The record clearly establishes that attorney Manuel did not have a hand in the negotiations of the settlement, or that he advised or communicated with the Vorises in any manner regarding it. The testimony is uncontradicted that what was done on October 18 was in accordance with the agreement to settle the litigation. Both parties were aware of the pending decision of the appeal to this Court which could only be beneficial to one of the parties and detrimental to the other. It is evident that the parties decided to be governed by their own decision in reaching a mutual agreement rather than by any influence from some other source. The activity of Mr. Patten's attorney was lim-

ited to reducing to writing the mutually agreed to release, witnessing the signing thereof by Mr. and Mrs. Voris, and payment to them of the $500.00 cash consideration. The extent of the communication by Mr. Patten's attorney was merely to expedite the formalization of the agreement that the Vorises had arrived at with Mr. Patten the night before without regard to their attorneys or communication with them.

In this posture of the case, the plaintiff's claim of a willful violation of the Code of Professional Conduct by Mr. Patten's attorney or that the release prepared under these circumstances is void or voidable as a matter of public policy is not sustained.

The plaintiff also raises the contention that the release is void as to itself, a corporation, as Mr. and Mrs. Voris did not have the authority to bind it to this release. Although this question was not stated in the petition for permission to appeal as required in V.R.A.P. 5(b)(2), both parties briefed this question without objection to it being before the Court, and the answer to it could "in at least one alternative finally dispose of the action." V.R.A.P. 5(a).

The defendants, however, maintain that plaintiff is estopped from denying the validity of the release because of prior conduct in that in all previous dealings with the plaintiff Mr. and Mrs. Voris had acted as though they were authorized to conduct business for the plaintiff. The test of estoppel in this jurisdiction is whether in all the circumstances of the case, conscience and duty of honest dealings should deny one the right to repudiate the consequences of his representations or conduct. *Caledonia Sand & Gravel Co.* v. *Campbell*, 128 Vt. 182, 185, 262 A.2d 221 (1961); *Chadwick* v. *Cross-Abbott*, 124 Vt. 325, 331, 205 A.2d 416 (1964).

The doctrine of estoppel is based upon the grounds of public policy, fair dealing, good faith, and justice, and its purpose is to forbid one to speak against his own act, representations or commitments to the injury of one to whom they were directed and who reasonably relied thereon. *Caledonia Sand & Gravel Co.* v. *Campbell, supra*, 128 Vt. at 185.

In applying the benefits of estoppel it is not essential that the representation giving rise to the application of estoppel should be fraudulent in the strictly legal significance of that term. *Neverett* v. *Towne,* 123 Vt. 45, 55, 179 A.2d 583 (1962).

In reexamining *Dutch Hill Inn, Inc.* v. *Patten, supra,* 129 Vt. 466, 282 A.2d 815 (1971), it can readily be seen that all previous dealings with the plaintiff by Mr. Patten were through Mr. and Mrs. Voris. Although the Court in this case found that Voris did not have the legal authority to enter into an agreement to sell the assets of the plaintiff to Patten (see 129 Vt. at 471), it is clear that the plaintiff consistently had been doing business through the Vorises. For the first time the Vorises raise in the present appeal that they did not have the authority to enter into legal actions and agreements for the plaintiff.

In the case of *Davenport* v. *Crowell,* 79 Vt. 419, 65 A. 557 (1907), a stockholder brought an action in equity against the president of a corporation for losses occasioned by the president giving accommodation notes to a failing company. The stockholder claimed that the president was liable because he had no authority to give such notes. However, the evidence showed that the orator knew or was bound to know because in his capacity as clerk he had access to the records showing such accommodation notes being given and he did not object. He acquiesced and assented to the action of the president in giving such accommodation notes. On page 429 of the opinion, Justice Munson, writing for the Court, stated:

> "[S]hareholders cannot lie by sanctioning, or by their silence at least acquiescing in an arrangement which is *ultra vires* of the company to which they belong watching the result; if it be favorable and profitable to themselves to abide by it and insist on its validity; but if it proves unfavorable and disastrous, then to institute proceedings to set it aside."

The same is true here. Mr. and Mrs. Voris entered into the release well knowing that an opinion which they did not yet know about in 129 Vt. 466 very well could be unfavorable to them. As the stockholders and officers of the plain-

tiff corporation it can well be inferred that they claimed to Mr. Patten to have the authority to enter into the arrangements to settle on behalf of the corporation. Mr. Patten had the right to rely upon this fact and their previous relationship in entering into what he believed would be a valid release for the cash consideration of $500. The Vorises being the only persons financially involved or in any way affected by their action on behalf of their corporation, it is not for them to now say that the corporation is not bound by their conduct and avoid its effect. Obviously in this case, conscience and duty of honest dealings should deny the Vorises the right to repudiate the consequences of their conduct of entering into an agreement for the corporation after they had found out that it might be to their disfavor under the opinion in 129 Vt. 466. Equitable estoppel lies to prevent such repudiation of this release. *Davenport* v. *Crowell, supra.*

The plaintiff also raises the specter of fraud in this transaction so as to void the release. At no time did the plaintiff offer any evidence to sustain his burden of proof of maintaining such fraud. See *Kelly* v. *Beaudoin,* 131 Vt. 27, 33, 298 A.2d 831 (1972). Although the matter of fraud is not raised by the issue submitted for review, suffice it to say that there is no proof of it in the record. Fraud is not to be presumed and must be proved. The law presumes innocence, not guilt. See *Kendall's Admr.* v. *Roseberry,* 120 Vt. 498, 144 A.2d 836 (1958). Moreover, the trial court found that there was no fraud.

It was error by the court below not to have granted defendants' motion to make the entry of "Settled and Discontinued."

*The question presented under V.R.A.P. 5(b)(2) is answered in the negative; reversed and remanded with directions that the cause be entered "Settled and Discontinued."*