NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2017 VT 76

No. 2016-355

| | |
|---|---|
| In re Langlois/Novicki Variance Denial | Supreme Court |
| In re Langlois/Novicki NOV | |
| Town of Swanton v. Gary Langlois | |
| (Michael Heller, Appellant) | On Appeal from |
| | Superior Court, |
| | Environmental Division |
| | |
| | April Term, 2017 |

Thomas S. Durkin, J.

Michael Heller, Swanton, Pro Se, Appellant.

Katelyn E. Ellermann of Murphy Sullivan Kronk, Burlington, for Appellee Langlois.

PRESENT: Reiber, C.J., Skoglund, Robinson and Eaton, JJ., and Carroll, Supr. J., Specially Assigned

¶ 1. **EATON, J.** This appeal involves a dispute between two neighbors—Gary Langlois and Michael Heller—over the construction of an open structure called a pergola on the shore of Lake Champlain in Swanton. The Environmental Division consolidated three related proceedings concerning this dispute and concluded that the Town of Swanton was equitably estopped from enforcing its zoning regulations and that the pergola, which did not comply with those regulations, could remain. We affirm.

¶ 2. The facts as found by the Environmental Division are as follows. Langlois owns property on Maquam Shore Road in Swanton, located in the Swanton Shoreland Recreational Zoning District. Heller is his abutting neighbor. Swanton Zoning Regulations require a permit

for any land development, which includes enlargement of any building or other structure. Town & Vill. of Swanton Land Use & Dev. Regs., Zoning Bylaws & Subdivision Regs., § 9.1(A)(3) (Jan. 8, 2014) [hereinafter Zoning Regulations], http://townofswantonvermont.weebly.com/ planning--zoning-dept.html [https://perma.cc/V2XT-RB3W]. However, no permit is required for one accessory structure on a property, which can be no larger than 100 square feet, no greater than ten feet in height, and must be set back at least five feet from all lot lines. Id.

¶ 3.    Sometime in 2014, Langlois spoke with a contractor about adding a pergola to a concrete patio which had been on the Langlois property for about twenty years. In late June 2014, a friend of Langlois, Ronald Kilburn, who was at the time the Swanton zoning administrator, was at the Langlois property for a social visit. At that time, Langlois asked Kilburn if he would need a permit to construct a pergola on the existing patio footprint which was visible to Kilburn. Kilburn, who was also familiar with the property lines, told Langlois that no permit would be needed for the construction. Soon thereafter, Langlois asked a contractor for a sketch and a quote for the construction of the pergola.

¶ 4.    Once Langlois received the sketch and the quote, he went to the zoning administrator's office, showed Kilburn the sketch, and told him he planned to construct the pergola on the existing concrete patio. The sketch depicted a structure exceeding ten feet in height. Langlois again asked Kilburn if a zoning permit was required. After looking at the sketch and reviewing the zoning regulations, Kilburn again told Langlois that no permit was required.

¶ 5.    In August 2014, Langlois gave his contractor a non-refundable deposit for the materials to construct the pergola. Langlois had some experience with the Town's zoning regulations because he previously filed a complaint about a neighbor's proposed house site, so before construction began, Langlois spoke with his neighbor, Heller, to tell him of his plans for constructing a pergola. He also told Heller that he had spoken with zoning administrator Kilburn and that no zoning permit was necessary. Heller told Langlois he did not mind if Langlois

2

constructed the pergola but asked that it not include screens. A few days later, Heller's wife sent Langlois an email saying she and her husband had concerns about the pergola and would prefer that it not be constructed. Despite their concerns, neither Heller nor his wife made any complaint at that time to the Town. In September 2014, Heller asked Kilburn if he could construct a similar pergola on his property. Kilburn told Heller that he also could build a pergola on his land without a permit.

¶ 6. The Langlois pergola was completed near the end of September 2014. It measures eighteen by twenty feet and is greater than ten feet in height, but it does not extend beyond the patio footprint. The pergola and the concrete patio sit approximately one foot from the Heller property line, but Heller did not file any complaint with the Town during construction. In all, Langlois spent approximately $33,000 on the structure. Neither party disputes that the pergola exceeds the zoning regulations' square footage limitation and the height restriction, and it also does not meet the lot line setback requirement. Thus, the information provided by Kilburn that no permit was required for the Langlois pergola was incorrect.

¶ 7. Things began to unwind when the Town's Selectboard learned in mid-December 2014 that Kilburn had told Langlois that he did not need a permit for the pergola. The Selectboard directed Kilburn to take corrective action, so he sent Langlois a letter in January 2015, acknowledging his previous position that Langlois did not need a permit and Langlois's reliance on that information, and directing him to submit the sketch and file for an after-the-fact zoning permit. In response, Langlois came to the zoning administrator's office and filed for the permit, which Kilburn immediately denied. Langlois applied for a variance and appealed the permit denial to the Town's Development Review Board (DRB). Following a hearing, on April 9, 2015, the DRB denied Langlois's appeal and request for a variance, finding that the pergola did not meet the setback requirement for a permit or the criteria for a variance. Langlois appealed the permit and variance denials to the Environmental Division in early May 2015.

¶ 8.    In June 2015, Kilburn sent Langlois a Notice of Zoning Violation (NOV), describing the alleged violation as "[t]he [c]onstruction of a building (pergola) on an existing patio which does not meet the setbacks required."  The NOV gave Langlois seven days to remove the pergola, after which he would be subject to a daily fine.  In late June, the Selectboard removed Kilburn from work on the Langlois violation, and the replacement zoning administrator revised the NOV to require Langlois to remove the pergola by July 23, 2015, at which point penalties would accrue.  Langlois appealed the revised NOV to the DRB, which held a hearing, and in December 2015, denied Langlois's appeal, and upheld the NOV.  The DRB found that Kilburn acted beyond his authority in telling Langlois that he did not need a permit, that Langlois recognized he needed a permit, and that Langlois's previous experience with the zoning regulations gave him knowledge that a permit was required for the pergola.  Langlois appealed this denial to the Environmental Division.

¶ 9.    In January 2016, while Langlois's appeals were pending, the Town filed an enforcement action against him seeking injunctive relief and penalties in the Environmental Division.  The Environmental Division consolidated the appeals—the permit denial and variance, the NOV appeal, and the enforcement action—in July 2016.  It upheld the denial of the request for variance, reasoning that under the zoning regulations, Langlois bore the burden of proving that his proposed use satisfied the regulatory criteria and finding that Langlois offered no evidence supporting why a variance should have been granted.

¶ 10.    The court then considered Langlois's argument that the Town was equitably estopped from enforcing the regulations.  The court reasoned that although estoppel against the government is rarely an appropriate remedy, it was justified in this case because the zoning administrator knew sufficient facts to make an informed and correct decision about whether a permit was needed, the zoning administrator intended his opinion to be acted upon, Langlois did not know a zoning permit was required, and Langlois acted to his detriment on the information he

4

received. It further concluded that to not estop the government would result in an injustice that would outweigh any negative public policy that would result from estopping the Town. As a result, the Environmental Division estopped the Town from enforcing its zoning regulations and requiring removal of the pergola. Consequently, it dismissed the NOV and the enforcement action. Heller, participating as an interested party, timely appealed the dismissals of the NOV appeal and enforcement action to this Court.

¶ 11. The determination of whether a party is equitably estopped is a legal question which we review de novo. See Vt. N. Props. v. Vill. of Derby Ctr., 2014 VT 73, ¶ 23, 197 Vt. 130, 102 A.3d 1084. Accordingly, this Court will uphold the trial court's legal conclusions as to the applicability of estoppel only when those conclusions are reasonably supported by the evidence. Cold Brook Fire Dist. v. Adams, 2008 VT 28, ¶ 6, 183 Vt. 614, 950 A.2d 1206 (mem.). We defer to the court's factual findings unless, taking them in the light most favorable to the prevailing party, they are clearly erroneous. In re Wagner & Guay Permit, 2016 VT 96, ¶ 9, __ Vt. __, 153 A.3d 539.

¶ 12. "The doctrine of equitable estoppel precludes a party from asserting rights which otherwise may have existed as against another party who has in good faith changed his [or her] position in reliance upon earlier representations." My Sister's Place v. City of Burlington, 139 Vt. 602, 609, 433 A.2d 275, 279 (1981). It is "based upon the grounds of public policy, fair dealing, good faith, and justice, and its purpose is to forbid one to speak against his [or her] own act, representations or commitments to the injury of one to whom they were directed and who reasonably relied thereon." Dutch Hill Inn, Inc. v. Patten, 131 Vt. 187, 193, 303 A.2d 811, 815 (1973). As we have repeatedly acknowledged, the doctrine must be applied with great caution when the party against whom estoppel is sought is the government, but when a government agent acts within that agent's authority, it is a defense that must be available. Vt. N. Props., 2014 VT 73, ¶ 26.

¶ 13. The equitable estoppel doctrine has four elements: (1) the party being estopped must know the relevant facts; (2) the party being estopped must intend that his or her conduct be acted upon; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting estoppel must rely to his or her detriment on the estopped party's representations. Id. ¶ 27. Additionally, where, as here, the party against whom estoppel is sought is the government, the party asserting estoppel must also demonstrate that "the injustice that would result from denying the estoppel outweighs the negative impact on public policy that would result from applying estoppel." In re Griffin, 2006 VT 75, ¶ 18, 180 Vt. 589, 904 A.2d 1217 (mem.).

¶ 14. On appeal, Heller contends that the Environmental Division incorrectly concluded that Langlois proved the five elements of estoppel against the Town. We address each in turn.

I. Zoning Administrator's Knowledge of the Facts

¶ 15. Heller claims that zoning administrator Kilburn did not have knowledge of the facts. According to Heller, Kilburn was not provided a sketch of the proposed pergola design, and even if he had been provided a sketch, it was so deficient as to not apprise Kilburn of the facts. We cannot conclude that the trial court erred in finding first, that Kilburn was provided a sketch and second, that the sketch was sufficiently detailed to put Kilburn on notice of the relevant facts.

¶ 16. First, Kilburn testified that he did not remember reviewing the sketch but that he did not dispute Langlois's testimony that he had shown it to him. Consistent with this evidence, the Environmental Division found that Kilburn had reviewed the sketch. The weight to be given to Kilburn's testimony was within the discretion of the Environmental Division, and the court's finding that that Kilburn reviewed the sketch in his office at the request of Langlois was not clearly erroneous. See In re LaBerge NOV, 2016 VT 99, ¶ 35, __ Vt. __, 152 A.3d 1165.

¶ 17. Second, Heller is correct that the sketch Langlois showed Kilburn lacked certain details necessary to determine every way in which the proposed structure triggered the need for a zoning permit. The issue is not whether Kilburn knew every reason why a zoning permit was

6

required for the proposed pergola, as Heller contends. Rather, the issue is whether Kilburn knew enough facts to put him on notice that a zoning permit was required. Cf. Vt. N. Props., 2014 VT 73, ¶ 28 (explaining that knowledge of facts element satisfied where party estopped was on notice about relevant facts). The zoning regulations require a permit for any land development except for maintenance and repair of an existing structure which does not change the building footprint or for one accessory structure not exceeding 100 square feet in floor area, not more than ten feet in height, and which is set back at least five feet from the property line. Zoning Regulations, § 9.1(A)(3). Kilburn, the government official responsible for enforcement of the zoning regulations, was acting within the scope of his authority when he told Langlois, twice, that no permit was required, and given that he was an "authorized agent of the government" charged with enforcing zoning regulations, "he was reasonably charged with knowing the [zoning regulations]." See In re Lyon, 2005 VT 63, ¶ 19, 178 Vt. 232, 882 A.2d 1143.

¶ 18. Here, the pergola was not an existing structure and therefore a permit was required by the zoning regulations unless it qualified as an accessory structure. Zoning Regulations, § 9.1(A)(3). It is clear from the sketch alone that the pergola as proposed substantially exceeded ten feet in height and thus did not qualify as an accessory structure. The court found that Kilburn was familiar with the proposed location of the pergola and was aware of the size and location of the existing patio and its proximity to the neighboring properties from his own visits to the Langlois property. Thus, having been to the property, having reviewed the sketch, and being charged with knowledge of the zoning regulations, Kilburn had knowledge of ample facts, including the structure's height, apparent square footage, and apparent proximity to the property line, to accurately determine that a zoning permit was necessary for the pergola. Any one of these aspects of the proposed pergola that did not meet the accessory structure restrictions would have been sufficient to require a permit. See Zoning Regulations, § 9.1(A)(3). That a more exacting investigation by Kilburn would have provided additional reasons to require a permit does not

7

change this analysis. We agree that Kilburn had knowledge of the facts sufficient to know that a zoning permit was required for the pergola.

## II. Zoning Administrator's Intention that Langlois Act on His Advice

¶ 19. We also agree with the trial court's conclusion that under these facts Langlois has demonstrated that Kilburn intended that Langlois act upon his advice. We addressed a similar situation in In re Lyon, 2005 VT 63, where a Regional Engineer from the Agency of Natural Resources (ANR) offered advice to the Lyons, owners of a camper that ANR was investigating for a potential wastewater violation. Id. When the Lyons received a notice of potential violation, the Regional Engineer presented them with three options to avoid a violation. The Lyons took the Regional Engineer's advice and pursued two of the three options. On appeal, we held that this was sufficient to demonstrate that the Regional Engineer had intended for the Lyons to rely on his advice. Id. ¶ 20. We reasoned that because the government official gave the Lyons specific advice about how to receive a permit and therefore avoid a violation, and because "[t]he Regional Engineer is central to [the permit] process as both advisor and the person with authority to issue the permits on behalf of the agency," the Regional Engineer "fully intended" for the Lyons to rely on his advice. Id.

¶ 20. The same is true here. Kilburn was the "authorized agent of the government" responsible for enforcing zoning regulations. Id. ¶ 19. Indeed, as Heller himself argues "Kilburn is a very experienced and competent legal and zoning professional" with twelve years of service as the Town's zoning administrator, and Kilburn testified that he participated in drafting the Town's first zoning regulations and was the chair of the Act 250 district commission for the region that includes the Town. Langlois approached Kilburn twice to ask for his advice about whether a permit was necessary for the pergola. As the trial court found, Langlois had an informal discussion with Kilburn at Langlois's property, where Kilburn could see the proposed location for the pergola. Kilburn advised Langlois that he did not need a permit. They had a second conversation in the

8

more formal setting of the zoning administrator's office, where Langlois presented Kilburn with his contractor's design sketch of the proposed pergola. Kilburn, having reviewed the materials that Langlois gave him and having referenced the zoning regulations, again informed Langlois that he did not need a permit. We agree with the trial court that this is sufficient evidence that "[Kilburn] gave his opinion knowing that Mr. Langlois would act upon it." See Lyon, 2005 VT 63, ¶ 20 ("[I]n performing his duties, the [government official] fully intended for the Lyons to act on his advice in order to receive a permit, which they did.").

### III. Langlois's Knowledge of the True Facts

¶ 21. Heller contends that Langlois knew that the zoning regulations required him to get a permit for the pergola despite Kilburn's multiple assurances to the contrary. He bases this claim primarily upon Langlois's lack of initially filing a formal application for a zoning permit and decision instead to proceed only on Kilburn's oral assurances that no zoning permit was required. Heller suggests that Langlois made an incomplete and misleading disclosure to Kilburn regarding the pergola, knowing that his friendship with Kilburn had the potential to cloud Kilburn's judgment, in an effort to avoid the permit requirement. He further suggests Langlois's prior involvement with the neighbor's zoning dispute put Langlois on notice that a permit was required for the pergola.

¶ 22. The Environmental Division found that Langlois's general knowledge that a zoning permit is required in some instances did not put him on notice that the proposed pergola required a permit. Specifically, it found that "[t]here was no evidence that anyone had informed Mr. Langlois that pergolas required permits, and to the layman, whether an unenclosed structure proposed for an already existing concrete slab or patio area required a permit likely would have seemed ambiguous." "While as a general rule [Langlois's] ignorance of the law would not excuse failure to comply with its requirements, this is an exceptional circumstance." Lyon, 2005 VT 63, ¶ 21. The trial court considered the testimony concerning Kilburn's relationship with Langlois

9

and whether it played some role in his response to Langlois's inquiry or in Langlois's decision to ask Kilburn if a permit was required for the pergola rather than by applying for one. The court made no finding that a personal relationship played any role in Kilburn's actions or that the Langlois's actions in seeking an oral opinion were intended to circumvent appropriate process, and the court made sufficient factual findings to support its legal conclusion. See Bonannon v. Bonanno, 148 Vt. 248, 251, 531 A.2d 602, 604 (1987) ("On review, the trial court's findings will be deemed insufficient when we are left to speculate as to the basis of the trial court's decision."). The trial court is in a unique position to assess witness credibility and the weight of the evidence presented. Kanaan v. Kanaan, 163 Vt. 402, 405, 659 A.2d 128, 131 (1995). There has been no showing that the court's findings concerning the discussions or actions of the parties were erroneous.

¶ 23. Kilburn was the appropriate person within the Swanton government to ask about the need for a zoning permit. There is no sound reason to require a person in Langlois's position to insist upon filing for a permit after having been told twice by the person in charge of administering the Zoning Regulations that no permit was required. We have recognized that citizens should not be charged with knowing local regulations better than government officials charged with administering them, and we again hold that where, as here, a government official charged with administering zoning regulations provides inaccurate advice, we will not assume that the citizen was nevertheless aware of the actual legal requirements. Lyon, 2005 VT 63, ¶ 21.

¶ 24. We disagree with Heller that the necessity for a permit in the circumstances of this case should have been obvious to Langlois. As the trial court noted, a pergola is an unenclosed, detached structure and Langlois proposed to build it on an existing concrete patio, and the trial court found that this project was sufficiently unique that Langlois's prior involvement with zoning permits did not put him on notice that a permit would be required in this case. The trial court's findings are supported by the evidence. The zoning regulations do not require permits for all

10

detached structures, and they specifically exempt accessory structures from the Town's permitting requirements. See Zoning Regulations, § 9.1(A) (listing exemptions from zoning permit requirement). Under these facts, asking the zoning administrator if a permit was required was a reasonable approach. Having twice been told, once in an informal setting and once in the zoning administrator's office, that no permit was required, there is nothing to reasonably suggest that Langlois knew otherwise. See Lyon, 2005 VT 63, ¶ 21 ("[I]t would be manifestly unfair to charge permit applicants with the responsibility of correctly interpreting and enforcing the applicable legal provisions in the face of advice to the contrary from the responsible government agency.").

¶ 25. Lastly, Heller's contention that Langlois intended to avoid the zoning regulations by not applying for a permit ignores the existence of the zoning regulations as the touchstone against which the project would be judged. Kilburn's misinformation about the need for a permit did not change the requirements of the zoning regulations. There would be no reason why Langlois would expect to successfully avoid the need for a permit if one were required when he brought his intention to construct the pergola not only to the attention of the zoning administrator, but to Heller as well. As this litigation amply proves, the initial erroneous determination that Langlois did not need a permit provided no assurance that someone else would not raise a challenge to the absence of a permit. In this case, that challenge was made by the Selectboard as well as Heller. We agree that Langlois did not know the true facts.

IV. Langlois's Detrimental Reliance on Kilburn's Advice

¶ 26. We also agree with the Environmental Division that Langlois relied to his detriment on Kilburn's advice. The Environmental Division found that Langlois "incurred over $30,000 in costs to construct the pergola" and that if the Town were successful in its efforts to enforce the zoning restrictions, he would incur a penalty and would be forced to remove the pergola, "render[ing] worthless" his investment. These findings are more than sufficient to establish detrimental reliance for the purposes of estoppel. Compare Lyon, 2005 VT 63, ¶ 22 (finding

11

detrimental reliance where citizens "suffered the costs of defending their permit" and "presumably will have to repeat the permitting process at greater time and expense if the Board's revocation is upheld" and where citizens' "title to the affected lots will be clouded until a new permit is successfully obtained"), with In re Griffin, 2006 VT 75, ¶¶ 20-22 (finding no detrimental reliance where zoning administrator gave incorrect advice but where citizens were "exactly in the same position as they would have been if the former zoning administrator had provided the correct advice"), and Wesco, Inc. v. City of Montpelier, 169 Vt. 520, 524, 739 A.2d 1241, 1245 (1999) (finding no detrimental reliance where citizen's reliance on government official's act "was misplaced and premature").

## V. Injustice Would Result from Not Estopping the Government

¶ 27.    The Environmental Division correctly recognized that estoppel against the government is rare and should be allowed only in extraordinary circumstances.  See In re McDonald's Corp., 146 Vt. 380, 383, 505 A.2d 1202, 1203-04 (1985).  As we have previously explained, the government is subject to equitable estoppel only where the party seeking estoppel has satisfied the four traditional elements and where the "the injustice which would result from a failure to uphold an estoppel is of sufficient dimensions to justify any effect upon public interest or policy which would result from the raising of an estoppel."  Id. at 383, 505 A.2d at 1204 (quotation omitted).  Where the party seeking estoppel has made this additional showing, however, we have permitted estoppel against the government.  See Vt. N. Props., 2014 VT 73, ¶ 34 (holding that injustice would result if government were not estopped from revoking permit where village made representations to property development that village was holding necessary water in reserve for development); Lyon, 2005 VT 63, ¶ 23 (holding that permit applicant made sufficient showing to estop ANR from revoking wastewater permit); Stevens v. Dept. of Soc. Welfare, 159 Vt. 408, 421-23, 620 A.2d 737, 744 (1992) (government estopped from denying retroactive application of benefits where agent provided patients inaccurate information about healthcare billing); My

12

Sister's Place, 139 Vt. at 609, 433 A.2d at 279-80 (city estopped from enforcing building code regulations where City Fire Marshall acting within his authority invited citizen to rely on an inaccurate interpretation of regulations).

¶ 28. Here, we agree with the Environmental Division that the equities weigh in favor of estopping the Town's enforcement of the zoning regulations. That determination is one which is not lightly made. One the one hand, Langlois reasonably relied on information Kilburn provided to him and he spent over $33,000 based upon that information. Kilburn was the proper person to whom Langlois should have directed his questions. The inquiry itself was reasonable, given the nature of the structure contemplated and the use of an existing footprint.

¶ 29. On the other hand, the citizens of the Town are entitled to rely upon proper enforcement of their zoning regulations, and estopping the Town will result in Langlois receiving a benefit, in the form of an unpermitted pergola, that others in the Town cannot obtain. We acknowledge that Heller is an innocent party in this zoning fiasco and will suffer a more significant impact than other citizens may from these events. But the Environmental Division also correctly determined that Langlois was reasonable in his actions and justifiably relied upon the misinformation he received; he is likewise innocent. We cannot expect more from Langlois than what was reasonable for him to do; he asked the right questions of the right government official and acted in accordance with and in reliance upon the information he received. If we do not estop the government in this instance, Langlois will be without recourse for the $33,000 he spent in constructing the pergola and he will be penalized for following the conclusion of the zoning administrator that no permit was needed, which was given to him on multiple occasions. Were we to not estop the government in this instance, we would be hard-pressed to tell Langlois, or any other citizen in the Town, what Langlois was required to do differently than what he did here. We agree that such an injustice outweighs any negative effect upon public policy that will result from estopping the Town. It is likewise reasonable to conclude that applying estoppel against the Town

in this instance may result in it taking a more studied approach in the future to opinions rendered about the need for zoning permits.

Affirmed.

FOR THE COURT:

_____
Associate Justice

¶ 30. **SKOGLUND, J., dissenting.** I cannot agree that Langlois's monetary damages outweigh Heller's reliance on the proper administration of the Town of Swanton's zoning laws, which were enacted to prevent the harm. If the harm to Heller's property and, by extension, the Town's citizens' faith in their zoning laws does not outweigh or, at the least, equal the cost of removing a pergola, this Court should remove the fifth factor from the test for asserting equitable estoppel against the government, for that factor is all bark and no bite. I dissent.

¶ 31. To successfully assert equitable estoppel against the government, the party seeking estoppel must prove the four traditional elements of estoppel as well as a fifth factor: that "the injustice that would ensue from a failure to find an estoppel sufficiently outweighs any effect upon public interest or policy that would result from estopping the government in a particular case." Lyon, 2005 VT 63, ¶ 17, 178 Vt. 232, 882 A.2d 1143 (quotation omitted). I do not quibble with the majority's analysis of the first four factors; rather, my concern involves the unequal weight given to one individual's potential monetary injury when balanced against another innocent individual's reasonable reliance on proper municipal governance and the damage done to the integrity of the same.

¶ 32. Here, in its analysis of the fifth factor, the Environmental Division found that the cost of building the pergola was approximately $33,000, in addition to legal costs that Langlois accrued defending the zoning violation. The court noted that Langlois clearly indicated his

intentions to the zoning administrator, Kilburn, and that Langlois relied on Kilburn's representations. Further, the court concluded that Kilburn's "mistake does not impact the enforceability of the Regulations on other landowners or future acts on Mr. Langlois's property, and does not undermine the Regulations themselves." Against these considerations, the court weighed the harm to Heller. The court conceded that, even if Heller desired a similar outbuilding, he would be unable to construct it without running afoul of the zoning laws. It further found that allowing Langlois's pergola to remain would impact Heller's view of the lake. But the court concluded that these factors did not outweigh Langlois's financial harm, particularly because Heller did not object when Langlois unofficially notified Heller of his plans to construct the pergola and because Heller did not formally object until the pergola was constructed.

¶ 33. This reasoning is not persuasive. Whether Heller objected when Langlois informed Heller of his plans should have no bearing on the inquiry. Upon being informally notified of the construction, Heller was entitled to rely on the Town's proper administration of its zoning regulations. That is, Heller likely assumed that Langlois would seek the proper zoning permits and that Swanton would correctly enforce the zoning ordinances. In fact, Heller's failure to object demonstrates the degree to which his harm implicates the enforceability of the Town's regulations and the manner in which his injury completely undermines those regulations. If the zoning regulations had been correctly enforced, Heller would have had no need to object. Now, a pergola permanently alters the view from his house, a constant reminder of the Town's inability to implement the regulations and to properly protect his interests.

¶ 34. Nor am I persuaded by the majority's analysis, which relies heavily on the monetary loss to Langlois while curtly acknowledging that "Heller is an innocent party in this zoning fiasco and will suffer a more significant impact than other citizens may from these events." Ante, ¶ 29. Beyond this mention of Heller's innocence, the majority gives short shrift to Heller's injury and does not consider the true ramifications of the injury, such as the possibility that the pergola could

devalue Heller's property or that the pergola will permanently affect Heller's enjoyment of his property.

¶ 35. More important, the majority does not weigh Heller's own reliance on Swanton's proper administration of the zoning laws. I can find no case in Vermont where one individual's particular harm stemming from reliance on a government agent outweighs the harm to an innocent third party who also relied on the government's proper administration of the laws. In My Sister's Place v. City of Burlington, for example, the operator of a women's shelter met with the deputy fire warden to discuss the renovations necessary to comply with the fire code. 139 Vt. 602, 606, 433 A.2d 275, 278 (1981). At this meeting, the warden provided a list of improvements necessary for compliance with the operator's plans, including the operator's plan to open a restaurant in part of the space. The required list provided was incorrect. After the operator completed renovations, the warden revealed during a subsequent inspection that, as a result of his unfamiliarity with the fire code, he had incorrectly approved the use of the space as a restaurant. Id. at 607, 433 A.2d at 278. We affirmed the trial court's conclusion that the city was estopped from enforcing the code against the operator. Id. at 610, 433 A.2d at 280.

¶ 36. Similarly, in Vermont North Properties v. Village of Derby Center, we concluded that the defendant-village was estopped from denying that the plaintiff-developer reserved water and sewer rights. 2014 VT 73, ¶ 24, 197 Vt. 130, 102 A.3d 1084. In analyzing the fifth factor, we concluded that the scope of the plaintiff-developer's water and sewer right reservation, coupled with the formal recognition of the reservation by the entire village board, outweighed any public interest implicated by estopping the government. Id. ¶ 34; see also Lyon, 2005 VT 63, ¶ 31 (holding that permit applicant made sufficient showing to estop Agency of Natural Resources from revoking wastewater permit); Stevens v. Dep't Soc. Welfare, 159 Vt. 408, 420-21, 620 A.2d 737, 743-44 (1992) (concluding that government estopped from denying retroactive application of benefits where agent provided patients inaccurate information about healthcare billing).

16

¶ 37. The common thread running through these cases is that the equitable estoppel acted as shield, protecting the individual or organization from any harm that resulted from reliance on the government's representation. See Covington Cty. v. Page, 456 So. 2d 739, 741 (Miss. 1984) ("The doctrine of equitable estoppel is to be cautiously applied. It is a shield, not a sword."). I do not believe that equitable estoppel is an appropriate action where, as in this case, the proverbial raising of the shield harms an innocent third party who also relied on the government's assurances. Here—although the wound was surely not intentional—Langlois's invocation of estoppel operated as a sword against Heller and pierced his reliance on the Town's zoning laws. Cf. id.

¶ 38. Moreover, this result undermines our repeated admonitions that equitable estoppel against the government must be applied "with great caution." Ante, ¶ 12; see also Lyon, 2005 VT 63, ¶ 16 (" '[T]he doctrine of estoppel must be applied with great caution when the government is the involved party . . . .' " (quoting My Sister's Place, 139 Vt. at 609, 433 A.2d at 279)). Unlike the majority of other jurisdictions, this Court does not impose additional requirements to guarantee that equitable estoppel against the government applies only in limited circumstances.* Thus, we

---

* The majority of other jurisdictions require additional proof beyond the five factors to establish equitable estoppel against the government.

For example, some courts, including the majority of federal courts, require some sort of affirmative misconduct by the government employee that goes beyond mere negligence or an intent to induce reliance. Compare ante, ¶ 19 ("We also agree with the trial court's conclusion that under these facts Langlois has demonstrated that Kilburn intended that Langlois act upon his advice."), with Morgan v. Gonzales, 495 F.3d 1084, 1092 (9th Cir. 2007) ("A party seeking to raise estoppel against the government must establish affirmative misconduct going beyond mere negligence; even then, estoppel will only apply where the government's wrongful act will cause a serious injustice, and the public's interest will not suffer undue damage by imposition of the liability." (quotation omitted)). The Minnesota Supreme Court demonstrated the functionality of this standard in a case remarkably similar to this one: City of North Oaks v. Sarpal, 797 N.W.2d 18, 25-26 (Minn. 2011). In Sarpal, a zoning official mistakenly provided a document and approved a construction permit for a shed, even though the shed violated setback requirements. Id. Although the shed owners had incurred a unique expenditure, the court concluded that the zoning permit mistake was not wrongful conduct sufficient to support equitable estoppel against the government. Id. at 27.

must rigorously apply the fifth factor to ensure equitable estoppel is only applied to protect against the harm resulting from an individual or organization's detrimental reliance. Where those narrow factual circumstances are not present, as in this case, a careful balancing of the equities must act as a check to guarantee that, in protecting one person from harm, the courts do not harm an innocent third party. In such circumstances, moreover, the tipping point should be whether the injured third party depended equally on the government's proper administration of the laws or rules. Otherwise—as the majority's decision demonstrates—a party need only prove the first four factors and the balancing of the equities will inevitably resolve in that party's favor, even if an innocent third party is injured.

¶ 39. Here, the proper approach should be a balancing of Heller's reliance on the enforcement of zoning laws against Langlois's reliance on the zoning administrator's promises. Both are innocent parties. The cost to Langlois is simply monetary. The cost to Heller is more intrusive and damaging. And, when the damage to the Town's citizens' confidence in the proper administration of the zoning laws is added, a tipping point is reached. I do not believe that the application of equitable estoppel should injure an innocent third party, particularly where the third party relies on proper municipal governance of the laws.

¶ 40. I am authorized to state that Justice Robinson joins this dissent.

_____
Associate Justice

---

Similarly, other courts limit the doctrine by concluding that the doctrine cannot prevent the state from performing its governmental functions. See Chanos v. Nev. Tax Comm'n, 181 P.3d 675, 679 (Nev. 2008) (holding that equitable estoppel did not apply to Attorney General enforcing open meeting law that had previously not been enforced). Still other courts limit the doctrine based on the government function being performed; for example, Maine does not permit equitable estoppel in the context of government taxation. Fitzgerald v. City of Bangor, 1999 ME 50, ¶ 15, 726 A.2d 1253, 1256 ("When the governmental function at issue is the discharge of responsibilities regarding taxation, we have consistently held that estoppel may never be invoked.").