STATE OF VERMONT

Docket No. 164-12-17 Vtec

| | |
|---|---|
| DeVita Subdivision Amendment | DECISION ON MOTION |

The present appeal is of a Town of Williston (Town) Development Review Board (DRB) November 14, 2017 decision (the 2017 Decision) denying Frank and Christel DeVita's application for a discretionary permit. The DeVitas appeal the 2017 Decision to this Court. Before the Court are the parties' cross-motions for summary judgment on Questions 1 and 2, as well as the Town's motion for summary judgment on Question 3.

The DeVitas are represented by Christopher Roy, Esq. The Town is represented by Paul Gilles, Esq.

## Legal Standard

Pursuant to V.R.C.P. 56(a), we grant summary judgment to a party "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a), applicable here through V.R.E.C.P. 5(a)(2). In determining whether there is any dispute over a material fact, "we accept as true allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material." White v. Quechee Lakes Landowner's Ass'n, Inc., 170 Vt. 25, 28 (1999) (citation omitted). When considering cross-motions for summary judgment, the Court considers each motion individually and gives the opposing party the benefit of all reasonable doubts and inferences. City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332.

## Factual Findings

We recite the following factual findings solely for the purpose of deciding the pending motions.

1.    The DeVitas own property located on Fieldstone Drive (the Property) in Williston, Vermont. The Property is 35.44 acres.

2. The Property was originally created by subdivision on December 19, 1995 (the Original Permit). The Original Permit created four building lots (Lots 1 through 4), the Property (Lot 5), a wastewater disposal lot, and a proposed right-of-way for a public roadway.

3. Lots 1 through 4 range in size from 1.26 to 1.53 acres. The wastewater disposal lot is 1.2 acres.

4. The DeVitas built a home on Lot 1, which is located at 290 Fieldstone Drive.

5. The Town's Unified Development Bylaw (the Bylaw) sets forth a multi-stage review process for development requiring a discretionary permit. Bylaw Chapter 6.

6. Pre-application review is the first step in this process. Bylaw § 6.2 sets forth the Town's pre-application review process.

7. On March 18, 2016, the DeVitas submitted a pre-application to further subdivide the Property (the 2016 Pre-Application). Additionally, they sought to merge the wastewater disposal lot with Lot 1. The 2016 Pre-Application proposed to reconfigure Lot 5 to create three building lots and leave the remaining land as open space (the Project).

8. On April 26, 2016 and May 24, 2016, the DRB held hearings on the 2016 Pre-Application. The minutes of these hearings, as approved on June 17, 2016, authorized the DeVitas to file an application for a discretionary permit to amend the Original Permit as proposed (the 2016 Decision).

9. The 2016 Decision included various recommendations made by the DRB regarding the application. The list of recommendations included two crossed-out recommendations relating to the Public Works design standards, which would have recommended a cul-de-sac instead of a hammerhead road design at the pre-application stage.

10. A June 17, 2016 cover letter sent with the minutes states: "You are advised that decisions of the DRB may be appealed to the Vermont Environmental Court, within 30 days from the date of this letter, as provided by 24 V.S.A. § 4471."

11. The 2016 Decision was not appealed.

12. On March 28, 2017, the DRB approved three units of growth management allocation for the three building lots proposed in the 2016 Pre-Application, beginning on July 1, 2017.

13.     The DeVitas then applied for a discretionary permit. On November 14, 2017, the DRB denied the permit (the 2017 Decision). Among the reasons for denial were conflicts with the conditions of the Original Permit and access which did not comply with Public Works design standards. Specifically, the DRB found fault with the proposed lot configuration and the road design, which was a hammerhead instead of a cul-de-sac.

14.     The DeVitas appealed the 2017 Decision to this Court on December 13, 2017.

**Discussion**

The motions presently before the Court ask us to decide whether the DeVitas' discretionary permit should be granted because the lot configuration and hammerhead road design issues were not raised by the Town DRB at the pre-application stage of the 2016 Decision. The DeVitas assert that the 2016 Decision is a final and binding decision, which approved the lot configuration and hammerhead road because it did not expressly disapprove of those aspects of the Project. The Town, they argue, should be bound by its tacit approval of those design elements at pre-application, so that it cannot later deny their discretionary permit on those same grounds.

While we subscribe to the DeVitas' view that certain decisions of the Town at the pre-application stage are final and binding, we do not agree that the Town's representations regarding the lot and road design fall within that category of decision. The Town's choice to leave the lot and road design questions for a subsequent stage of the application process falls outside the scope of what constitutes a final and binding decision at the pre-application stage. The Town was not bound to approve the lot configuration and hammerhead road design at the discretionary permit stage of the application.

Next, the Town's motion on Question 3 requires us to decide whether the Town was equitably estopped from denying the DeVitas' discretionary permit because of its representations at the pre-application stage. Because the facts do not support a claim of equitable estoppel, we conclude that the Town was not precluded from denying the discretionary permit.

## I. The 2016 Decision is a final and binding decision but did not approve the contested design elements of the Project.

The DeVitas assert that the 2016 Decision is a final and binding decision that effectively approved the lot configuration and hammerhead design aspects of the Project pursuant to 24 V.S.A. § 4472(d). They argue that the Town could not later deny them a permit on those grounds and was required to approve the discretionary permit.

The Town disagrees. It argues that the 2016 Decision is only final and binding for the limited determination reached therein, namely, the determination that the application could progress to the growth management allocation phase. The Town offers that the 2016 Decision does not approve the number or location of lots, the access and road layout, or other substantive project details. Such issues are reviewed in greater detail later in the application process.

A failure to appeal decisions like the 2016 Pre-Application determination results in all interested parties being bound by the decision. 24 V.S.A § 4472(d). The term "decision" is not statutorily defined, but "the word connotes finality . . . [;] if a 'decision' does not resolve an issue it is not really a decision, but mere commentary or analysis." In re Saxon Partners LLC BJ's Warehouse Sketch Plan, No. 5-1-16 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Jul. 15, 2016) (Walsh, J.).

The 2016 Decision is a final and binding decision with regards to the determinations made therein. See In re Pintair Discretionary Permit, No. 54-5-15 Vtec, slip op. at 11 (Vt. Super. Ct. Envtl. Div. May 27, 2016) (Walsh, J.) (concluding that an unappealed pre-application decision is final and binding). Therefore, we must consider what legal issues the 2016 Decision determined to discover what aspects of that decision were final and binding on the DRB.

To do so, we evaluate the nature and purpose of the pre-application stage, as established by the terms of the Bylaw and the 2016 Decision itself. In a parallel context, when interpreting permit terms, the Court seeks to implement the intent of the decision drafters. Agency of Nat. Res. v. Weston, 2003 VT 58, ¶ 16, 175 Vt. 573.[1] We do this by accepting the plain meaning of the words the drafters chose to use in their decision. Weston, 2003 VT 58, ¶ 16.

---

[1] While this precedent relates to interpreting Agency of Natural Resources permits, the Court finds it applicable to our interpretation of a municipal land use decision, such as the 2016 Decision at issue here.

When interpreting zoning ordinances, we apply the same rules of statutory construction. In re Appeal of Trahan, 2008 VT 90, ¶ 19, 184 Vt. 262.  We "construe words according to their plain and ordinary meaning, giving effect to the whole and every part of the ordinance."  Id. (citations omitted).  If there is no plain meaning, we "attempt to discern the intent from other sources without being limited by an isolated sentence."  In re Stowe Club Highlands, 164 Vt. 272, 280 (1995).  Further, when interpreting an ordinance, "[w]e adopt a construction that implements the ordinance's legislative purpose and, in any event, will apply common sense."  In re Lashins, 174 Vt. 467, 469 (2002) (mem.) (citation and quotation omitted).

The Town's Bylaw requires pre-application review for development needing a discretionary permit, with some irrelevant exceptions.  Bylaw § 6.2.1. The Bylaw states that pre-application review's purpose:

> [I]s to acquaint the DRB and its advisors with a proposed development site and its possibilities without requiring the presentation of extensive surveying, engineering, or design data.  At this step in the review process, plans for complex projects should be presented in an informal way that invites comment and discussion of alternatives.

Id., § 6.2.2.

Pre-application is "a basis for discussion."  Id., § 6.2.8.  At this stage, an application "is neither approved nor rejected and creates no vested rights."  Id.  In this process, the DRB "will adopt written recommendations that should be reflected in the application for a discretionary permit.  The DRB may also require that certain information be included in the application for a discretionary permit."  Id.

The Town's pre-application process and the decisions it produces are a preamble to a multi-stage review process.  During the pre-application stage, the Town does not approve any substantive elements of the proposal.  Importantly, the Bylaw expressly states that the pre-application process does not approve a proposal.  Id.  Overall, the pre-application process provides for an informal discussion regarding the proposal prior to the formulation and submittal of survey, engineering, and design details which can be expensive and time consuming.

The DeVitas argue that because the 2016 Decision is a final appealable decision, the Town was prohibited from denying the application on grounds it did not require during the pre-application stage, or from placing additional or different conditions on the Project during

discretionary permit review.[2]  Specifically, the DeVitas assert that because the Town failed to impose recommendations regarding the hammerhead road design and the configuration of the lots, those aspects of the Project were approved.  In effect, the DeVitas interpret the absence of a modification at the pre-application stage as a waiver of the issue by the Town, resulting in tacit approval of that dimension of the Project as proposed at that stage.

The DeVitas advance a number of cases in support of their position, which, for the most part, involve situations where the decisions of a town DRB early in the application process later precluded that DRB from imposing certain permit conditions or denying an application.  See In re Blackrock Const. LLC Subdivision, No. 31-4-15 Vtec (Vt. Super. Ct. Envtl. Div. Apr. 21, 2016) (Walsh, J.); In re Simpson Dev. Corp., No. 54-3-05 Vtec (Vt. Envtl. Ct. Jun. 27, 2006) (Durkin, J.); In re Perras & Sons Preliminary Plat, No. 29-2-06 Vtec (Vt. Envtl Ct. Oct. 18, 2006) (Durkin, J.).  They depend on these cases for the principle that early decisions can be final and binding on DRBs.

---

[2] The DeVitas rely on Pintair to support this assertion.  In Pintair, the Town declined to recommend that an applicant prepare a specific plan prior to filing a discretionary permit.  No. 54-5-15 Vtec at 11 (May 27, 2016). Neighboring property owners asserted that the Town should have required this plan.  Id.  The Court concluded that the decision to impose a specific plan occurs at the pre-application review stage, not the growth management allocation.  Id. (citing Bylaw § 6.2.8.4; Bylaw Chapter 11).  Therefore, the decision not to require the plan became final and binding when it was not appealed after the preliminary stage, such that the opposition could not later attack the determination.  This corresponds with the holdings of Simpson and Perras, in that the Town was bound by its determination at the preliminary stage only because the determination of whether to require a specific plan was one the Bylaw expressly assigns to the preliminary stage.  Id.  It was a decision the Bylaw mandated the DRB make then and there in pre-application. Here, the Bylaw does not confine decisions on lot configuration or road design to the preliminary stage; these issues can be left for later review.

Pintair, therefore, addresses the situation of a required recommendation that the Bylaw states should be imposed at that stage of review.  Pintair does not stand for the proposition that a DRB authorization to move on from the pre-application stage, which declines to decide matters not delegated to that stage, results in an approval of those matters for purposes of the discretionary permit.

The DeVitas also cite to another section of Pintair, which does not directly consider the final or binding nature of early-stage DRB decisions.  They direct our attention to a discussion of "substantial changes."  Id. at 5-8. In the relevant sections, we held that when a project that has already passed through the pre-application phase transforms due to "substantial changes," it cannot then proceed to the growth management allocation unless it starts again at square one and returns to pre-application review.  We compared this to a "mini version of our remand doctrine, which holds that when a project undergoes truly substantial changes during Environmental Division proceedings, we must remand the application back to the relevant municipal panel because we only have jurisdiction to review the same 'projects' that were reviewed below."  Id. at 6 (citing In re All Metals Recycling, Inc., 2014 VT 101, ¶ 19, 197 Vt. 481).  The comparison does serve to emphasize the belabored point that some preliminary decisions of the Town can be treated as final and binding.  But this analogy to the remand doctrine, as with their other use of Pintair, fails to demonstrate why the choice of the Town to reserve the lot and road design questions for later stages qualifies for that treatment.

We have already acknowledged <u>Pintair</u>, the most relevant case before us, since it is the only one set in the context of Williston's unique Bylaw, for its holding that "an unappealed pre-application is final and binding." No. 54-5-15 Vtec at 11 (May 27, 2016). But these cases fail to establish *what* about the pre-application decision is final and binding. Clearly not everything said, or unsaid, in pre-application review can bind the Town, otherwise this preliminary stage would function as final approval and its purposes would be defeated. As we have discussed, the real issue before this Court is what falls within the scope of "final and binding" in the beginning stages of the application process. Here, the Town chose to reserve the lot configuration and hammerhead road design questions for a later stage of the deliberation. The cases cited by the DeVitas do not show that this action falls, or should fall, within the category of choices that go on to bar the Town from taking a position on those issues farther down the road.

The DeVitas repeatedly cite to the <u>Blackrock</u> case, involving the sketch-plan stage of another town's review process, which is not so easily analogized to the pre-application stage of the Town's review. Even if we accept the comparison, <u>Blackrock</u> stands for the proposition that a DRB cannot say that an issue (wastewater disposal in that case) does not need to be addressed in the first round of the sketch-plan phase, but then turn around and deny the proposal on the basis of that very same issue when the revised application comes before the DRB in a second round of the sketch-plan phase. The Court dealt with a different application process, an application that was recycled through the same phase twice and met with different standards each time, and, most importantly, affirmative representations by the DRB as to what the application did or did not require to progress in the review. Those circumstances are not before us. The Town did not affirmatively require the proposed lot configuration or the hammerhead design, only to make contrary demands later on. Instead, the Town reserved those questions for another day.

Similarly, <u>Simpson</u> took place against the backdrop of another town's application process and based its holding on affirmative representations made by the DRB to the applicant. The case also involved a different stage of the review process. Having passed through the pre-application phase, the application at issue was evaluated in "Preliminary Plan Review." The plan was approved at that stage but was denied at the final review. In finding the later denial improper,

the Court determined that the DRB was bound to a statement it made in the Preliminary Plan Review stage, where it wrote something to the effect of, 'once you fulfill our conditions, this application will generally conform to our code.'[3] The DRB could not later say that the application did not conform once its conditions were met.

What distinguishes Simpson from the case at hand are, first, the explicit representations of the DRB in that case that it later directly contradicted. Next are the obligations that the town's bylaws placed on the DRB at that stage of the review process. There, the regulations *required* the DRB to make a determination as to the conformity of the application with the relevant codes at that stage of the review process; it was built into the bylaws. Norwich Subdivision Regulations § 2.3(D)(4). This corresponds with the binding nature of the DRB decision in Pintair, where the Bylaw required the DRB to decide whether to require a specific plan from the applicant at the pre-application stage and no later. Bylaw § 6.2.8.4. But here, we have neither explicit requirements from the Town regarding lot configuration or road design, nor an obligation imposed by the Bylaw on the Town to make substantive choices on those issues in the pre-application phase.

The last case presented by the DeVitas further supports the proposition that some aspects of a DRB decision can be binding, even at early stages, but does not support putting the Town's decisions at issue here in that category. In Perras, the Court bound the Town of Georgia to its position that the subdivision at issue was "major," even where that position was taken in the early sketch-plan phase. But, like Simpson, the binding nature of Georgia's decision was derived from explicit representations by the DRB affirming "major" status. Also like Simpson, Georgia was bound to its decision regarding the subdivision's "major" status because that determination was required of them at that stage. Sketch-plan review is used in Georgia to "make some initial determinations as to whether the proposed project should be reviewed on a minor or major basis." Perras & Sons Preliminary Plat, No. 29-2-06 Vtec at 8 (Oct. 18, 2006). That determination

---

[3] The actual language is: "As a preliminary determination and subject to the recommended changes, requests for further documentation and potential conditions [contained within the DRB Decision], the proposed subdivision plan generally conforms to applicable subdivision review standards under [NSR] Article 3, and with other municipal regulations currently in effect." Simpson Dev. Corp., No. 54-3-05 Vtec at 13 (June 27, 2006).

was reserved for that stage of the process, explaining why it fell within the scope of what was final and binding on the town as the application review proceeded.

On the other hand, and unlike Simpson, Georgia was *not* bound on the issue of whether the application generally conformed with its code.  Id.  This is because the town made no explicit representations to the applicant to that effect and its bylaws did not confer the authority to make such a determination at that stage.  That situation, in which the town was not bound by an early determination, tracks the circumstances before us more closely than the other offered precedent.

Perras, like the other cases the DeVitas advance, does support their assertion that particular choices in the early stages of an application's review can bind towns. But, contrary to their intent, Perras also demonstrates that towns are not bound by their reserve on certain issues when they choose to save those questions for later in the process, especially where their bylaws do not obligate them to make the call in the preliminary stage of review.

The Town has formulated a multi-stage permitting regime, beginning with a pre-application review that does not produce a substantive approval with vested rights or a rejection. To hold that the Town's pre-application review is as binding as the DeVitas recommend would render the Town's subsequent review processes meaningless and bind the Town to determinations made without the aid of extensive surveying, engineering, or design data.  See Bylaw § 6.2.2 (setting forth the purpose of the pre-application stage).

The 2016 Decision included six recommendations.  These recommendations do not include changes to the existing hammerhead road design or lot lines.[4]  Along with providing recommendations, the 2016 Decision expressly authorized the DeVitas to file an application for a discretionary permit.  That aspect of the 2016 Decision, the authorization to proceed, was final and binding on the DRB without an appeal.  But the cover letter to the 2016 Decision does not

---

[4] The DeVitas mischaracterize the two crossed-out recommendations in the 2016 Decision.  They say that the act of crossing out the recommendations (which only referred to a cul-de-sac road design and not the lot configuration) was an "express rejection" of the cul-de-sac recommendation.  They read an approval of the existing hammerhead into this.  Without any other argument or support for this position, we decline to read ambiguous inferences into the Town's presentation of its recommendations.  The Town expressly stated six recommendations. The act of crossing out two others does not convey the affirmative message of rejection.  Instead, the Town communicated a neutral position of silence on the questions, reserving the issues for later stages of review.

state that the Project was approved or imply finality on the road design or lot configuration issues. Instead, it notes that, while the decision is appealable, the DeVitas' "proposed residential development will be subject to Growth Management Allocation review." The decision, the cover letter, and the language of the Bylaw all indicate that the Project would be subject to further review. The choice of the DRB to postpone the road and lot questions does not result in an effective final and binding waiver of those issues by the Town.

For these reasons, we conclude that the 2016 Decision is a final and binding decision on the determinations reached therein. These determinations are limited to the authorization of the DeVitas' proposed Project to proceed to later, more-detailed stages of DRB review. We conclude that the 2016 Decision did not approve the road design or lot configuration aspects of the Project by its choice to preserve those issues for later deliberation. Therefore, we **GRANT IN PART** and **DENY IN PART** the Town's motion for summary judgment on Questions 1 and 2 and **GRANT IN PART** and **DENY IN PART** the DeVitas' motion for summary judgment on Questions 1 and 2.

**II.       Equitable estoppel does not apply to the Town's denial of the discretionary permit.**

The Town has also moved for summary judgment on Question 3, which asks whether the Town was equitably estopped from denying the DeVitas a discretionary permit because of its actions in the pre-application process. We apply the same legal standard articulated above, giving the nonmovants, the DeVitas, the benefit of any reasonable doubts and inferences.

As a preliminary matter, the Town argues that the equitable estoppel question should be dismissed because, as it is currently phrased, it lies outside the scope of this Court's de novo review. The Town offers that because Question 3 focuses on impropriety of the board below, and de novo review cures any improprieties below, the Court cannot consider the Town's earlier representations when evaluating the matter anew. This does not comport with well-established principles of de novo review.

De novo review requires this Court to assume the role of the DRB. In re Goddard College Conditional Use, No. 175-12-11, slip op. at 6 (Vt. Super. Ct. Envtl. Div. Apr. 30, 2013) (Walsh, J.) (". . . in a de novo appeal of a DRB decision, this Court sits in the shoes of the DRB."); see also In re Simpson Dev. Corp., No. 53-4-05 Vtec, slip op. at 2 (Vt. Envtl. Ct. Sep. 7, 2006) (Durkin, J.)

(describing that in de novo review, "the Court's role is to place itself in the shoes of the municipal panel."). This means we do not afford deference to the specific DRB decision that is being appealed. See In re Byrne Trusts Nov, No. 150-7-08 Vtec, slip op. at 6 (July 15, 2009) (Durkin, J.) ("The reference to reviewing legal issues 'without affording deference' to the DRB is another way of saying that we review legal issues de novo."). While we do not afford deference to the specific decision under appeal here—the DRB's last decision regarding the final discretionary permit— this does not mean that we disregard all of the DRB's prior actions or the procedural posture providing the context of the appeal. We must still consider whether our decision is limited by what occurred below, like any alleged misrepresentations that may give rise to a claim of equitable estoppel.

The Town implies that Question 3 is improperly phrased because it focuses our attention on defects in the Town's conduct in denying the discretionary permit, instead of on the reasons for denial. The Town states that the question cannot be interpreted to ask "whether this Court is obligated to approve the application based on the Town's representations [in the 2016 Decision]." But the Town does not specify why not. When the Court "sits in the shoes of the DRB," we necessarily inherit the series of preceding decisions of the Town. To ask whether the Town is equitably estopped from denying the discretionary permit is to ask whether this Court, in taking on the role of the Town, is similarly estopped. While Question 3 does not say this as explicitly as the Town would like, we are "empowered to decide issues 'intrinsic' to the questions in the Statement of Questions." In re Remy Subdivision Alteration, No. 21-1-08 Vtec, slip op. at 5 (Vt. Envtl. Ct. July 31, 2008) (Durkin, J.) (citing In re Jolley Assocs., 2006 VT 132, ¶ 9, 181 Vt. 190). Question 3 is adequately phrased and requires us to consider the equitable estoppel issue.

The doctrine of equitable estoppel has four elements: (1) the party being estopped must know the relevant facts; (2) the party being estopped must intend that his or her conduct be acted on; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting estoppel must rely to his or her detriment on the estopped party's representations. See In re Langlois/Novicki Variance Denial, 2017 VT 76, ¶ 13. Further, for the fourth element, the reliance must be reasonable. Vermont Structural Steel v. State, 153 Vt. 67, 74 (1989). The party

invoking the doctrine bears the burden of establishing each element. Fisher v. Poole, 142 Vt. 162, 168 (1982).

The Supreme Court has described equitable estoppel as having "five elements" when asserted against the government. Langlois/Novicki Variance Denial, 2017 VT 76, ¶ 14. A party seeking estoppel against the government must also demonstrate that the "injustice that would result from denying the estoppel outweighs the negative impact on public policy that would result from applying the estoppel." Lakeside Equip. Corp. v. Town of Chester, 2004 VT 84, ¶ 8, 177 Vt. 619. The fifth element adds a considerable burden to the party seeking to estop the government. See In re McDonald's Corp., 146 Vt. 380, 383 (1985) ("Estoppels against the government are rare and are to be invoked only in extraordinary circumstances."); see also In re Lyon, 2005 VT 63, ¶ 16, 178 Vt. 232 (instructing that the "doctrine of estoppel must be applied with great caution when the government is the involved party.") (internal quotation marks omitted).

While estoppel is generally a mixed question of fact and law, "[a]s in any case, the court must make the threshold determination of whether the evidence could support the application of equitable estoppel." LeBlanc v. Snelgrove, 2015 VT 112, ¶ 46, 200 Vt. 570 (citations omitted); see also L & H Transp., Inc. v. Drew Agency, 403 N.W.2d 223, 227 (Minn. 1987) ("While estoppel is ordinarily a question of fact for the jury, when only one inference can be drawn from the facts, the question is one of law.") (citations omitted).

In the case at hand, there is minimal dispute as to what took place, but much disagreement over the legal implications of the Town's 2016 Decision for later stages of the review process. Giving the DeVitas the benefit of all reasonable doubts and inferences, we conclude that they have not sufficiently supported a claim of equitable estoppel as to its second, third, fourth, and fifth elements.

The second factor of estoppel requires that the Town intended the DeVitas to rely on its representations in the 2016 Decision, not just as recommendations to be taken seriously as the application progressed, but as final approvals of the lot and road design. The Town's authorization in the 2016 Decision, the cover letter, and the Bylaw emphasize the non-binding, indefinite, and non-approving nature of any pre-application determinations. See Sobel v. City of

Rutland, 2012 VT 84, ¶ 21, 192 Vt. 538 (finding no equitable estoppel against the City of Rutland on summary judgment because the tax assessor's estimate of future taxes "explicitly disclaimed the accuracy and finality of his estimates"). And while "estoppel can be based on silence where there is an obligation to speak," Greenmoss Builders, Inc. v. King, 155 Vt. 1, 7 (1990), the Bylaw did not obligate the Town to make any final determinations regarding the lot configuration or road design at the earliest stage of review. Nor did the Town make any representations to that effect, or otherwise indicate that its pre-application recommendations were to be taken as final approvals. The Town did not intend for the DeVitas to rely on the authorization to move beyond the pre-application stage as a final approval of the disputed features of the Project.

The third factor of estoppel requires the DeVitas to show they were "ignorant of the true facts." True facts are "facts known to the party being estopped but unknown to the party asserting estoppel." Gravel and Shea v. White Current Corp., 170 Vt. 628, 630 (2000). This prong of estoppel requires us to examine whether the Town knew something regarding the 2016 Decision or growth management allocations that the DeVitas did not, which resulted in unfair dealing or bad faith misrepresentations. The DeVitas point to no facts known only to the Town and not to themselves. They have not alleged this element. See Ragosta v. Wilder, 156 Vt. 390, 395 (1991) ("Equitable estoppel is inapplicable here because there were no facts known to defendant but unknown to plaintiffs."). Even resolving all doubts in favor of the DeVitas, the record indicates uncertainty and ambivalence regarding those elements of the proposal on the part of the Town; it could not make up its mind. The Town did not possess knowledge of true facts of which the DeVitas were ignorant.

Additionally, confronted with the "informal" and introductory nature of pre-application review, the DeVitas cannot prove that their purported reliance on the 2016 Decision as a final approval was reasonable, as required by the fourth estoppel factor. The Town represented the nature and purpose of pre-application review with transparency. Consistent with the tone of pre-application, the Town did not directly address the lot or road design questions, much less indicate that those details were finally approved. Instead, it explicitly stated that the application would require further review. Its statements do not rise to the level of misrepresentation required for estoppel. See Beecher v. Stratton Corp., 170 Vt. 137, 139 (1999) ("[w]hile the

representations relied upon need not be fraudulent in a strict legal sense, see id., generally a defendant is not estopped . . . absent either a promise or some sort of misrepresentation or concealment of a fraudulent character."). The Town's representations and the Bylaw made clear who bore the risk in pushing ahead with the Project after pre-application review. The DeVitas took on engineering and design costs to substantiate their preliminary plans without any guarantees, express or implied, from the Town. See Welch v. H. P. Hood and Sons, Inc., 138 Vt. 4, 5-7 (1979) (finding no estoppel because there was neither express nor implied agreement not to act).

Finally, the fifth element does not support a finding of equitable estoppel. This factor requires us to weigh the private injustice arising without estoppel against "any effect upon public interest or policy which would result from the raising of an estoppel." McDonald's Corp., 146 Vt. at 383.

The Town has seen fit to establish a pre-application phase of review, which does not approve or deny projects or vest any rights. Without the aid of extensive engineering, survey, or design data, the Town undertakes a preliminary screening to inform prospective developers whether their rough proposals are viable and worth further investment. Developers proceed with the inherent risk that a later stage of review might render part of their proposals noncompliant. The DeVitas ask us to bind the Town on specific details in this preliminary phase of review. To do so would require the Town to make determinations on project specifics that are functionally final and binding, without the benefit of engineering, design, or survey data. This defeats the purposes of pre-application review, along with the associated efficiencies of proposal screening, and prevents the Town from using pre-application review as it intended for all future applications.

The DeVitas bore the risk in proceeding with engineering and design measures after the pre-application phase. The possibility that certain aspects of the Project, though explored and invested in, might run afoul of the Town's Bylaw was inherent to the process. It is unfortunate that later stages of the review were unfriendly to their proposal. But binding the DRB to all that is said, and unsaid, during the pre-application phase has the effect of eliminating the "informal"

and introductory character of this early stage of review. The public interest and policy implications weigh against the application of equitable estoppel.

For these reasons, we **GRANT** the Town's motion for summary judgment on Question 3.

### III. Question 4 is overbroad as written.

Though neither party moved on the issue, we consider the viability of Question 4 because it is the only question remaining before this Court. We interpret the question to ask whether the DeVitas' proposal generally complies with the Bylaw so that the discretionary permit should be granted. This question fails to identify the specific issues regarding the denial of their permit the DeVitas would like us to address pursuant to V.R.E.C.P. 5(f). See Atwood PUD – Jericho, No. 170-12-14, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Feb. 4, 2016) (Walsh, J.), *aff'd in part and rev'd in part on other grounds*, 2017 VT 16, 204 Vt. 301 (discussing how appellants were required to craft more specific questions where they asked broadly whether their project conformed to the applicable regulations). The DeVitas shall file an amended Statement of Questions, specifically with respect to Question 4, to define the particular aspects of their permit denial they are asking this Court to consider.

### Conclusion

For the foregoing reasons, we conclude that the 2016 Decision is final and binding as far as it authorized the DeVitas' proposed Project to proceed to later stages of review. The 2016 Decision did not effectively approve the Project or its lot configuration and hammerhead design through the recommendations made therein. The Town was not obligated to approve the discretionary permit. Therefore, we **GRANT IN PART** and **DENY IN PART** the DeVitas' motion for summary judgment on Questions 1 and 2 and **GRANT IN PART** and **DENY IN PART** the Town's motion on these Questions.

We further conclude that the DeVitas have not sustained their claim of equitable estoppel against the Town. We **GRANT** the Town's motion on Question 3.

Because Question 4 is overbroad, the DeVitas have two weeks to specify the issues relating to their permit denial they want this Court to review. Thus, on or before October 12,

2018, the DeVitas shall file an amended Statement of Questions restating Question 4 with specificity.

Electronically signed on October 01, 2018 at 02:22 PM pursuant to V.R.E.F. 7(d).

_____
Thomas G. Walsh, Judge
Superior Court, Environmental Division